In re Faye D. SHANK, Debtor.

No. 03–77548.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Oct. 7, 2004.

Alex J. Dolhancyk, The Dolhancyk Law Firm, PC, Jonesboro, GA, for debtor.

## MEMORANDUM OPINION ON OBJECTIONS TO PROOFS OF CLAIM

PAUL W. BONAPFEL, Bankruptcy Judge.

Following confirmation of her chapter 13 plan, the debtor objected to nine unsecured proofs of claim on the ground that they did not have documents to support them as required by Rule 3001 of the Federal Rules of Bankruptcy Procedure and Official Form 10. Two claimants responded to the objection, contending that the debtor cannot object to claims after confirmation of her plan and that, in any event, their claims are allowable as filed. The other claimants did not respond.

Six of the proofs of claim (several of which were filed by an assignee of the original creditor) include only a one page statement containing information such as the debtor's name, the name of the original creditor and original account number, if applicable, and the amount due; the others have no attachment at all. The debtor has neither denied liability on the claims nor asserted that they overstate the amount she owes. In fact, the debtor's schedules show that she owes something on seven of the claims. An Appendix summarizing information about the claims is attached.

The objection and responses raise four issues:

1. Does confirmation of the debtor's plan bar a later objection to the proofs of claim?

2. If not, do the proofs of claim comply with the requirement of Rule 3001 and Official Form 10 that a claim based on a writing be supported with attached documentation?

3. If the proofs of claim do not comply with Rule 3001 and Official Form 10, should they be disallowed for that reason?

4. If the claims are not disallowed for lack of documentation, should the holders be required to amend them to attach sufficient documentation?

The Court concludes that confirmation of the debtor's chapter 13 plan does not preclude later claims objections; that the challenged proofs of claim do not comply with Rule 3001 and Official Form 10; that the remedy for such a deficiency is denial of the presumption of validity under Rule 3001(f) for a properly executed and filed proof of claim and not disallowance; and that there is no reason to require amendment of claims when, as here, there is no showing that there are any disputes about the debtor's liability on the claims or their amounts. The objections are, therefore, dismissed, without prejudice.

## I. OBJECTIONS TO CLAIMS AFTER CONFIRMATION

The Court first considers whether the confirmation of the debtor's chapter 13 plan bars her objections to the proofs of claim. In accordance with the usual practice in this Court, the debtor's plan specifies the treatment of claims based on their status as priority, secured or unsecured, but does not state their amount or specific payment terms. With regard to unsecured claims, the plan provides that allowed claims will be paid in full out of payments made to the chapter 13 trustee after priority and secured claims are paid in full.

Nothing in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure requires that objections be filed prior to confirmation. There are several important

reasons why they should not be interpreted as imposing such a rule.

The most critical relates to the timing of the confirmation hearing. For reasons explained below, holding the confirmation hearing as soon as possible after filing best serves the interests of all parties in the case and the bankruptcy court. *See* KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY, 3D ED. § 216.1(2000 & Supp.2004). Confirmation hearings in this district are typically scheduled for approximately two months after the filing of the case, which allows time for the trustee to conduct the § 341(a) meeting of creditors and for the debtor to file amendments to the plan in response to any issues raised by creditors or the trustee following that meeting.

Objections to claims cannot be filed before the filing of the claim itself, and considerations of economy and convenience typically lead a debtor to file all objections at the same time. The bar date for general creditors to file claims is 90 days after the § 341(a) meeting; it is 180 days for claims of governmental units, such as taxes. FED. R. BANKR. P. 3002(c). A bankruptcy court cannot shorten the deadline fixed by Rule 3002(c) for the filing of proofs of claim. FED. R. BANKR. P. 9006(c)(2). Thus, in this district, as in many others, the chapter 13 confirmation hearing in a routine case such as this one occurs prior to the bar date for the filing of proofs of claim. Given these considerations, it is not unusual for objections to claims to be filed after confirmation. *See In re Duggins,* 263 B.R. 233, 236–37 (Bankr.C.D.Ill.2001); KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY, 3D ED. § 216.1 (2000 & Supp.2004).

If the filing of objections to claims must precede confirmation, the confirmation hearing in fairness could not take place until the claims bar date had expired. (Otherwise, a creditor could avoid any pos-

sibility of a dispute by deferring the filing of the proof of claim until confirmation occurs.) Thereafter, there would have to be a reasonable time of, say, 30 days for investigation of claims and filing of objections where warranted. Given the time frames set by the Federal Rules of Bankruptcy Procedure, the Court could not schedule confirmation hearings until at least eight months after the bankruptcy filing. (If the § 341(a) meeting is scheduled approximately 30 days after filing, FED. R. BANKR. P. 2003(a), the claims bar date occurs 180 days thereafter or 210 days after filing. Adding a 30 day time for investigation of and objections to claims is 240 days, or about eight months.)

Such a delay would create significant costs and disadvantages for both debtors and creditors. *See* KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY, 3D ED. § 216.1 (2000 & Supp.2004). Although the debtor must ordinarily begin making payments as proposed in the plan to the chapter 13 trustee within 30 days after the plan is filed, 11 U.S.C. § 1326(a)(1), payments to creditors do not begin until confirmation occurs. 11 U.S.C. § 1326(c). While payment is thus delayed, the automatic and codebtor stays of 11 U.S.C. § 362(a) and § 1301 continue to prevent foreclosure or repossession of collateral as well as any collection efforts against a debtor and codebtors. The longer that it takes for payments to begin, the more creditors, particularly secured creditors such as home lenders and car finance companies, are at risk. Their collateral may be depreciating, and there is no certainty that the plan will be confirmed. If the plan is not confirmed, any money paid by the debtor to the trustee must be returned to the debtor, 11 U.S.C. § 1326(a)(2), and creditors do not receive any payments.

Faced with depreciating collateral and the prospect of having to wait eight

months or more to find out whether they will begin receiving payments under a confirmed plan, creditors will have to file motions for relief from the stay or for adequate protection payments in order to protect their collateral positions. Because a debtor will not be able to make both required plan payments and adequate protection payments if ordered (the latter of which are not required if appropriate payments begin under a confirmed plan), the debtor will necessarily have to amend the plan to reduce plan payments by the amount of the adequate protection payments.

This complicates the process and increases costs for both debtors and creditors. A creditor who chooses to await developments, or whose motion is deferred pending confirmation, faces economic loss due to delay in payment or, worse, due to uncompensated depreciation in its collateral if the plan is not confirmed and it receives no payments. Creditors who successfully proceed with motions, on the other hand, will incur additional attorney's fees and costs. Furthermore, a creditor's filing of a motion results in another piece of paper that must be handled and generates the necessity of a response from debtor's counsel, the negotiation of a consent order or litigation of the matter, and a conforming amendment to the plan—still more paper and further complications in the process. Because of the additional work that debtor's counsel has to do, a debtor also faces the possibility of more attorney's fees. All of this increases the workload of the chapter 13 trustee and the court as well. Although an oversecured creditor may add its attorney's fees to its claim, undersecured creditors cannot shift payment of fees to the debtor. In any event, the debtor's payment of an oversecured creditor's attorney's fees increases the burden on the debtor and may reduce funds available for other creditors.

Parties in chapter 13 cases and bankruptcy courts should not have to deal with these problems that would be created by delaying confirmation to accommodate a rule that objections to claims must be filed prior to confirmation unless there is a good reason for such a rule. In fact, there is no reason at all that objections to claims must be filed prior to confirmation. In almost all cases, it is not necessary to resolve the amount of claims prior to confirmation. A plan may be confirmed if it appropriately takes account of claims regardless of whether or in what amount they are allowed. (If there is an objection to a claim, payments on that claim are withheld so that the money is there if the creditor wins.) Under this procedure, extensive litigation over allowance of a claim does not hold up confirmation, and the chapter 13 trustee is able to make payments to other creditors whose claims are not disputed. If, as in this case, resolution of objections is not required for consideration of confirmation, there is no sound reason to require that they be filed before confirmation.

Indeed, until the debtor and other parties in the case know that the plan is confirmed, it often does not make economic sense to spend a lot of time trying to sort out claims; if the plan is not confirmed and the case is dismissed (or converted to a chapter 7 "no asset" case in which there will be no distribution to creditors), all that effort goes down the drain. Litigants will have spent a lot of time and money, and bankruptcy courts will have devoted scarce judicial resources, to deal with issues that, at the end of the day, do not matter.

Other difficulties arise if objections must be filed prior to confirmation. Debtors, especially consumers in chapter 13 cases, and their lawyers have many different is-

sues to deal with in the early stages of a case, and debtors have limited resources to pay their fees. Sometimes, issues do not arise, or it is not readily apparent that they are important, prior to confirmation, especially when confirmation occurs early in the case. Upon the filing of a chapter 13 case, the primary concern of the parties is confirmation of the plan, and the important confirmation issues involve treatment of secured and priority claims; the amount of claims is rarely a confirmation problem. Requiring objections prior to confirmation effectively imposes an extremely short "statute of limitations" that unfairly affects substantive rights. Moreover, if all potential objections must be asserted or lost prior to confirmation, debtors and other parties would be forced either to file protective objections or to seek delays in confirmation to allow for further investigation or litigation.

Debtors and other parties should have the opportunity to litigate disputes on the merits and not be trapped by an arbitrary deadline for filing objections that is not required by the Bankruptcy Code, the bankruptcy rules, or any reasonable policy consideration. (Although not a factor here because the debtor's plan provides for payment of claims in full, in many cases the reduction or disallowance of a claim will increase the amount paid to other creditors. At the time a plan is confirmed, the chapter 13 trustee or creditors may not know all the facts regarding the allowability of a claim; they should not be barred from objecting to claims after confirmation.)

Neither the Bankruptcy Code nor the Federal Rules of Bankruptcy Procedure require that objections be filed prior to confirmation. Sound policy considerations require that debtors and other parties in interest be permitted to raise objections after confirmation. Thus, many courts have decided that post-confirmation claims objections are permissible. *E.g., United States v. Kolstad (In re Kolstad)*, 928 F.2d 171, 174 (5th Cir.1991); *Morton v. Morton (In re Morton)*, 298 B.R. 301, 309–10 (6th Cir. BAP 2003); *Hildebrand v. Hays Imports, Inc. (In re Johnson)*, 279 B.R. 218 (Bankr.M.D.Tenn.2002); *see* KEITH M. LUNDIN, CHAPTER 13 BANKRUPTCY, 3D ED. § 287.1, at 287–23 and 287–25 (2000 & Supp.2004). *Contra, e.g., Adair v. Sherman*, 230 F.3d 890, 894–95 (7th Cir.2000); *Simmons v. Savell (In re Simmons)*, 765 F.2d 547, 553 (5th Cir.1985); *cf. In re Starling*, 251 B.R. 908, 910 (Bankr.S.D.Fla. 2000).

The Court must consider, however, whether the Eleventh Circuit's decision in *Universal American Mortgage Co. v. Bateman (In re Bateman)*, 331 F.3d 821 (11th Cir.2003), requires a contrary ruling. In *Bateman*, the Eleventh Circuit stated, *id.* at 827:

> Although § 502(a) does not provide a time limit to file an objection [to a claim], it must be filed prior to confirmation.

An examination of the facts and holdings of *Bateman* shows that this statement is dicta that does not establish a general rule applicable to cases like this.

In *Bateman*, the debtor's chapter 13 plan proposed to pay the arrearage on a home mortgage loan, which the plan stated was in the disputed amount of $21,600. The lender timely filed a proof of claim for an arrearage of $49,178.80. The plan was confirmed, without objection from the lender. Over a year later, the debtor objected to the claim. In response, the lender filed a motion to dismiss the case because the plan impermissibly modified the home mortgage in violation of 11 U.S.C. § 1322(b)(2) by providing for payment of the arrearage in the stated amount of

$21,600 instead of the claim amount of $49,178.80.

The bankruptcy court sustained the objection and refused to dismiss the case, holding that the plan, as a matter of substance, acted as an objection to the lender's claim and that, because the lender had not objected to the plan, its provisions, including the determination of the amount of the claim, were binding on the lender. Consequently, the bankruptcy court concluded that, upon the debtor's payment of the plan amount, the principal sum due on the mortgage must be the same as if no delinquency had ever occurred, and the lender could not recover the difference between the plan amount and the claim amount. The district court affirmed.

The Eleventh Circuit affirmed in part and reversed in part. The court agreed that the lender was bound by the terms of the plan and that the case should not be dismissed, but ruled that the lender was not precluded from recovering the difference between the plan amount and the claim amount because its mortgage lien survived the bankruptcy case.

The outcome in *Bateman* rests on three holdings. One holding is that the plan confirmation process cannot be used to determine the amount of a lender's claim; consequently, confirmation of the plan could not and did not determine the amount of the arrearage claim, and the lender therefore retained a claim for the full amount claimed. A second holding is that, because confirmation of a plan is generally binding on the parties, the case should not be dismissed, even though it did not provide for payment of the arrearage in the full amount. A third holding determines the consequence of those two holdings, *i.e.*, what happens when confirmation of a plan that is binding on a home mortgage lender results in payment of less than the lender's entire arrearage claim. The

court ruled that, because 11 U.S.C. § 1322(b)(2) prohibits modification of the rights of the holder of a residential mortgage in a chapter 13 plan other than to cure defaults and reinstate it, and because the lender's unsatisfied mortgage lien survives a bankruptcy case, the lender's claim for the unpaid arrearage is not affected by the bankruptcy case.

The relevant holding here is that a provision in a plan cannot control the amount of a claim if a proof of claim states a different amount. The rationale is that objections to claims must be asserted in accordance with procedures specified for objections to claims in Rule 3007 and that a plan provision can not constitute a "constructive objection." *Id.* at 828.

In its discussion of these issues, the court made the statement noted above that objections to a claim must be filed prior to confirmation, *id.* at 827, and explained, *id.* at 828:

> That the plan states an amount in conflict with the proof of claim demands a resolution of the inconsistency, but a debtor's post-confirmation objection is not the vehicle by which to do so.

The court also observed that the debtor had not "timely" objected to the lender's proof of claim. *Id.*

As described in the opinion, the debtor's post-confirmation objection to which these statements refer did not dispute the arrearage amount on the merits but sought only to give preclusive effect to the plan's provision setting forth its amount. It was not the timing of the filing of the objection that was fatal to the debtor, but the legal theory on which it was based (*i.e.*, that confirmation resulted in determination of the arrearage amount). Thus, the *Bateman* court was not presented with the question of whether the debtor could have objected after confirmation on the grounds

that she did not owe the amount claimed by the lender and that the correct amount due was the amount stated in the plan.

*Bateman's* ruling on the issue before it was that an objection to a claim cannot be made in a plan and that, therefore, confirmation of a plan cannot be preclusive on the issue of allowance of a claim. To be sure, the import of *Bateman* is that a debtor whose plan states the arrearage amount to be paid must obtain a pre-confirmation determination that the plan amount is correct if the debtor wants to have a reinstated and cured mortgage after she completes her chapter 13 plan. It is in this context that *Bateman* states that objections to a claim must be made prior to confirmation and that a post-confirmation objection (which sought only to enforce the plan's provision stating the amount of the claim) is not the proper way to resolve the inconsistency. But these statements are not essential to *Bateman's* rulings and have nothing to do with the issues that the court considered.

The facts here differ from the situation in *Bateman* in two critical ways. First, the debtor's claims objections here challenge the allowance of the claims directly, not because confirmation of the plan established their amounts. Second, the debtor's plan does not state the amounts of the claims. The facts in *Bateman* did not present, and the court did not consider, whether an objection must be filed prior to confirmation under either of these different circumstances.

Because the question of when objections to claims must be filed was, at best, incidental to the claims objection issue the *Bateman* court dealt with (*i.e.*, whether a provision in a plan could control allowance of a claim without an objection filed in accordance with Rule 3007), it did not actually analyze the issue. Importantly, it did not address the problems set out above

that a generally applicable rule would create.

*Bateman* limits its discussion of the statement that objections to claims must be filed prior to confirmation to the citation of two cases, *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*, 898 F.2d 1544, 1553 (11th Cir.1990), and *In re Starling*, 251 B.R. 908 (Bankr.S.D.Fla. 2000). *Bateman, supra*, 331 F.3d at 827. Examination of these cases shows that they do not support the proposition that objections to claims must be filed prior to confirmation in all circumstances.

In *Justice Oaks II*, the Eleventh Circuit held that an objection to *classification* of a claim in a chapter 11 plan raised an issue that was necessarily determined by the plan's confirmation and that, consequently, such an objection had to be raised prior to confirmation. *Justice Oaks II* states, "[W]hen the objection [to a claim] *is based on an argument that the plan misclassified the objectionable claim*, the objection must be made prior to confirmation of the plan." *Justice Oaks II, supra*, 898 F.2d at 1553 (emphasis added).

*Justice Oaks II*, then, dealt with an objection to classification—something a *debtor* will likely never raise because the debtor proposes the classification in the plan. *Justice Oaks II* may look like a claims objection case because the issue there was whether one creditor could attack another's secured claim after it had been allowed and paid pursuant to a plan. The basis of the attack, however, was not that the amount of the questioned claim was incorrect, but that it should have been subordinated and should not have been allowed as secured. The *Justice Oaks II* court did not hold that the objecting creditor's failure to object to the *claim* prior to confirmation precluded the later challenge; rather, the court held that the failure to object to the *classification* of the claim

prior to confirmation precluded the later effort to treat it differently, *i.e.*, to subordinate it. The precluded issue was, therefore, a question of *treatment* of the claim under the plan, not its *allowance*.

Although *Justice Oaks II* noted that the Fifth Circuit in *In re Simmons*, 765 F.2d 547 (5th Cir.1985), had found the requirement of filing objections prior to confirmation to be "implicit in several provisions of the Code," *Justice Oaks II* did *not* adopt the Fifth Circuit's rule. In fact, *Justice Oaks II* noted that there is "some dispute" about the *Simmons* holding and adopted the *Simmons* rule only *"as characterized above,"* i.e., to the extent it dealt with a misclassification issue. *Justice Oaks II, supra,* 898 F.2d at 1553 (emphasis added) & n. 11.

Classification is a confirmation issue, and an objection on that basis obviously must be made prior to confirmation. The question of allowance of a claim, however, is not a confirmation issue, as discussed earlier and as *Bateman* holds. Thus, neither the holding nor the rationale of *Justice Oaks II* establishes that objections to claims must be filed prior to confirmation. Indeed, *Justice Oaks II* carefully declined to adopt such a rule.

*Bateman* also cited the bankruptcy court's decision in *In re Starling*, 251 B.R. 908 (Bankr.S.D.Fla.2000). Properly read, *Starling* holds only that a debtor cannot raise a post-confirmation objection to a claim if the claim amount is actually stated in the plan itself. In *Starling*, the lender objected to confirmation of the debtor's plan on the basis that the arrearage was $8,000 more than the debtor proposed to pay in the plan. According to the *Starling* opinion, the "parties resolved the issue with an amendment to the chapter 13 plan, providing for full payment of the arrearage claimed." *Id.* at 909. The court confirmed the plan as amended. Later, the

debtor claimed that, in fact, he had paid the extra $8,000 to the lender and did not owe it. The debtor then filed an objection to the amount of the claim that the debtor himself had stated in the amended plan.

It is important to understand the procedural context in which *Starling* was decided. The confirmation procedures in that bankruptcy court contemplated that the debtor state the amount of claims in the plan and required that a creditor who disagreed with the stated amount file an objection to confirmation (even if the claims bar date had not yet expired). Thus, claims would be allowed or disallowed as part of the confirmation process. The *Starling* court explained its procedures in a footnote, *id.* at 908 n. 1:

> In this jurisdiction, the confirmation process can be expedited. "Pursuant to Administrative Order 99–2, if no objection to confirmation is timely raised at or before the meeting of creditors, the plan may be confirmed as unopposed and no formal confirmation hearing will be held." Local Form B91–1–New (Chapter 13 Case) (Local Form for Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors, Deadlines & Court's Confirmation Procedures). Since a plan can be confirmed prior to the bar date for the filing of proofs of claim, it is incumbent upon creditors treated under the chapter 13 plan to object to confirmation or be bound thereby.

*Starling* enforced the court's procedure by ruling that the *res judicata* effect of confirmation barred the debtor's post-confirmation objection: The debtor could not object to the claim because confirmation of his plan resulted in its allowance. The court concluded, "The debtor's objection is barred because the Debtor could have and should have raised this objection prior to confirmation." *Id.* at 911.

*Starling's* determination that a claims objection must be filed prior to confirmation thus arises from the effect of the court's combined claims allowance and confirmation procedures and the *res judicata* effect of those procedures, not from a requirement imposed by the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure. It does not follow that objections to claims must be filed prior to confirmation *in all cases,* nor did *Starling* purport to establish such a rule. In jurisdictions in which plans do not state claim amounts and the court's procedures do not contemplate that confirmation of the plan will establish claim amounts, confirmation does not determine the amount or validity of a claim and, therefore, there can be no *res judicata* effect. In such circumstances, the *Starling* decision is not implicated. Thus, *Starling* should be applied only in the specific factual and procedural situation in which it was decided; it does not establish a general rule that objections to claims must be filed prior to confirmation.[1]

In summary, neither the holding of *Bateman,* nor its rationale, nor the cases it cites support the proposition that claims objections must be filed prior to confirmation. *Bateman* involved significantly different facts that are not present here. Given the absence of any requirement for pre-confirmation claims objections in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure, and in view of the important policy considerations discussed above, the Court concludes that the statements in *Bateman* are not properly read as establishing a general rule applicable in all circumstances. In particular, there is no requirement that claims objections be filed prior to confirmation in cases such as this one in which the plan does not state amounts of claims and the Court's procedures do not contemplate allowance of claims through the confirmation process.

Based on the foregoing, and in accordance with *Morton v. Morton (In re Morton),* 298 B.R. 301, 309–10 (6th Cir. BAP 2003), and similar cases cited above, the Court concludes that confirmation of the plan in this case does not bar the debtor from later asserting objections to claims.

## II. COMPLIANCE OF PROOFS OF CLAIM WITH BANKRUPTCY RULES

■ The debtor contends that the challenged proofs of claim lack sufficient documentation to support the claims as required by Rule 3001 of the Federal Rules of Bankruptcy Procedure. Rule 3001(a) requires that a proof of claim "conform substantially" to the Official Form, which is Official Form 10. Rule 3001(c) requires that, when a claim is based on a writing, the claimant file an original or duplicate of

---

1. The bankruptcy court in *Starling* is in the same district from which the appeal in *Bateman* was taken. The different bankruptcy judges deciding the cases applied the same principle in both: Confirmation of a plan results in determination of the amount of a claim stated therein. The bankruptcy court in *Starling* precluded the debtor from challenging the amount of a claim stated in the confirmed plan whereas the bankruptcy court in *Bateman* ruled that the creditor was bound by the amount stated in the confirmed plan. The Eleventh Circuit's rejection of the *res judicata* effect of confirmation on allowance of a claim in *Bateman* may not mean that the holding of *Starling* is no longer good law in that district. The *Starling* court also based its holding on the theory that the debtor waived his objection to the claim when he stated its amount in the plan. Furthermore, the fact that the parties resolved their pre-confirmation controversy as to the amount of the claim with a plan amendment also provides a basis for a *res judicata* conclusion. Nevertheless, *Bateman's* rejection of the rationale that confirmation *is* preclusive with regard to allowance of claims as stated in the plan provides a further reason for limiting *Starling* to its facts and procedural context.

the writing with the proof of claim and that, if the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction be filed with the claim. Item 9 of Official Form 10 directs as follows with regard to supporting documents for a claim:

> Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. Do not send original documents. If the documents are not available, explain. If the documents are voluminous, attach a summary.

Three of the proofs of claim have no document attached. The other six, including those filed by the responding creditors, include a summary that states the name of the debtor, an account number, and the amount due. The attachments to the proofs of claim held by an assignee also state the original creditor's name. None of the summaries, however, includes any itemization or detail of the account. For example, they do not set forth an itemization of charges or even a separate statement of interest and other charges that are included. They do not show monthly activity (charges and payments) or include a copy of the last statement. They do not even allege the existence of an agreement by the debtor that would obligate her to pay or the basis upon which interest and other charges may be imposed.

One holder of assigned claims in this case, eCast Settlement Corporation, asserts that requiring more than it has provided would pose an unreasonable burden on it and other creditors (Response of eCast Settlement Corporation, ¶ 17):

> In a credit card context, claimants, who typically file thousands of claims each month, often rely on their computerized account summaries to support claims. If the Debtor was correct, these claimants would be subjected to searching for, reproducing, compiling, and filing possibly dozens of pages of attachments to each and every claim, or to making a determination that the documents are no longer available and preparing a separate statement to that effect.

In the vast majority of cases, objections are not made to claims that include a summary of the account. To suggest that such significant documentation be included with the initial filing of each and every claim when only a tiny percentage are ever the subject of a dispute poses an unfair and oppressive burden on claimants.

The cost alone of undertaking this exercise would be a deterrent to claims' filing, in direct contravention of the Bankruptcy Rules which call for the "just, speedy and inexpensive determination of every case and proceeding." F.R.B.P. 1001. Claimants may simply elect not to file claims in certain circumstances because the cost simply would not justify the expense of preparing claims on account, which are already a loss to the claimant in the first place. This can not possibly be an intended result of the claims filing process.

Moreover, eCast suggests that documents may not even be available (Response of eCast Settlement Corporation, ¶ 19 & n. 4), citing the requirements of Regulation Z under the Truth in Lending Act with regard to record retention. 12 C.F.R. § 226.25.

Many holders of consumer debt appear to share eCast's concerns. *See generally* S. Andrew Jurs, *Unsecured Claims and Rule 3001: How Much "Writing" or Supporting Information is Required?*, ABI JOURNAL, June 2004, at 10 ("Giant con-

sumer lenders merge or purchase the loan portfolios of smaller lenders, and their automated systems are called on to handle a record volume of accounts. At times, the sheer volume and need for standardization as claims are collected creates conflicts with bankruptcy claims practice and procedure.").

Whatever the minimum requirements of Rule 3001 and Official Form 10 with regard to attachments for a proof of claim based on a credit card or other consumer account debt are, which this Court does not decide, the proofs of claim here do not meet them. *See, e.g., In re Henry,* 311 B.R. 813, 817–18 (Bankr.W.D.Wash.2004). Even if summaries of such types of accounts are permissible, the purported summaries attached to these claims show little, if anything, beyond the information provided on the proof of claim form itself. They provide no basis on which a person looking at the proof of claim could make any kind of initial assessment as to whether there is a basis for the claim. One consequence of a proof of claim executed and filed in accordance with the bankruptcy rules is that the claim is entitled to a presumption of validity. FED. R. BANKR. P. 3001(f). In view of this evidentiary effect, the requirements of Rule 3001(c) and Official Form 10 are meaningless unless they require sufficient documentation that has some evidentiary import and establish something other than the same conclusory allegations set forth in the proof of claim form itself.

If this requirement imposes a burden on eCast and other holders of consumer debt, it is unavoidable. The fact that a party's business practices make it difficult to produce evidence to prove its case does not permit courts to ignore evidentiary rules in deciding a disputed matter. As discussed below, a burden should not be placed on a party gratuitously; a purpose should be served thereby. The requirement here is not gratuitous and does serve a valid purpose. Creditors who want their claims to have the evidentiary presumption that a claim is *prima facie* allowable must meet the requirements of Rule 3001.

### III. EFFECT OF DEFICIENT FILING

■ The debtor's sole objection to each claim is that it should be disallowed because of the lack of documentation required by Rule 3001. The consequence for such a deficiency, however, is not disallowance of the claim but denial of the Rule 3001(f) presumption of validity with, if appropriate, leave to the creditor to amend the claim. As explained in *In re Stoecker,* 5 F.3d 1022, 1028 (7th Cir.1993) (citations omitted):

> All that [Rule 3001] says, so far as bears on this case, is that the filing of a proof of claim is *prima facie* evidence that the claim is valid. If the documentation is missing, the creditor cannot rest on the proof of claim. It does not follow that he is forever barred from establishing the claim. Nothing in the principles or practicalities of bankruptcy or in the language of any rule or statute justifies so disproportionate a sanction for a harmless error. Forfeitures of valuable claims, and other heavy sanctions, should be reserved for consequential or easily concealed wrongs. A creditor should therefore be allowed to amend his incomplete proof of claim (what is often called an "informal proof of claim") to comply with the requirements of Rule 3001, provided that other creditors are not harmed by the belated completion of the filing.

*Accord, Biscayne 21 Condominium Association, Inc. v. South Atlantic Financial Corp. (In re South Atlantic Financial Corp.),* 767 F.2d 814, 819 (11th Cir.1985) ("[A] creditor need not timely file a letter perfect proof of claim before the expiration

of the time fixed by the court for the filing of such and ... amendment to a claim is freely allowed where the purpose is to cure a defect in the claim as originally filed, to describe the claim with greater particularity or to plead a new theory of recovery on the facts set forth in the original claim.").

The debtor argues that the failure of claimants to amend their claims prior to the hearing on the objections requires their disallowance because, without the Rule 3001(f) presumption, claimants cannot sustain their burden of proof. Support for this argument is found in *In re Henry*, 311 B.R. 813 (Bankr.W.D.Wash.2004).

In *Henry*, the debtors' objections asserted that the proofs of claim lacked sufficient documentation under Rule 3001(c) and requested that the court enter an order striking the filed claims but permitting the creditors 30 days to file an amended claim with sufficient documentation. Agreeing that the proofs of claim were deficient, the court granted the requested relief but ruled that, if the debtors had instead requested disallowance of the claims, the court would have granted that relief in the absence of a timely amendment to add sufficient documentation in response to the objection. *Id.* at 817–18. The *Henry* court formulated the following rule, *id.* at 817–18:

> [A] creditor must, at a minimum, file with its proof of claim form, but in no event later than in response to a claims objection by the debtor, (i) a sufficient number of monthly account statements to show how the total amount asserted has been calculated, and (ii) a copy of the agreement authorizing the charges and fees included in the claim. In the absence of that minimum evidentiary presentation, the creditor's claim should be disallowed.

The *Henry* rule should not be applied here for two reasons. First, the debtor's objections did not request disallowance *unless* the claims were amended, but *because* they lacked required documentation. The rule as formulated by the *Henry* court is premised on a request in the objection for disallowance *if* appropriate documentation is not forthcoming by the time of the required response. *Id.* at 818, 820. As *Stoecker* illustrates, however, a deficient proof of claim is not subject to disallowance merely because of a lack of sufficient documentation. Because the debtor's objection does not contemplate an opportunity for the claimants to amend their claims, it does not seek relief that the *Henry* rule would grant.

■ Even if the debtor's objection here had requested relief that would invoke the *Henry* rule, there is a second, more fundamental reason why the Court will not apply it: the debtor seeks disallowance of claims *solely* because of what is, in essence, a pleading deficiency. Without any allegation that she has any good faith theory that might require disallowance or reduction of any of the claims, on most of which, as matters now stand, she admits some liability in her schedules, she insists that the procedures of the bankruptcy rules governing *disputes* require that currently *undisputed* claims be disallowed. (The Court uses the term "undisputed" in the sense that no objection on the merits has been filed to any claim. A debtor's scheduling of a claim as contingent, unliquidated, or disputed, without affirmatively asserting in the objection that the debtor owes nothing or less than the amount claimed, would make no difference for purposes of the issues considered here.) Such a result not only makes no sense; it threatens the fair treatment of creditors in bankruptcy cases (especially chapter 13 cases), the just administration of those cases, and, indeed, the integrity of the bankruptcy system.

■ Applying common sense and the principle recognized in *United States v. International Horizons, Inc. (In re International Horizons, Inc.)*, 751 F.2d 1213, 1216 (11th Cir.1985), that principles of equity guide a bankruptcy court and that technical considerations not prevent substantial justice from being done, the Court concludes that an objection to a proof of claim based solely on the lack of attached documents provides no basis for disallowance of a claim, even if the claimant declines to respond to the objection. There are several reasons for this conclusion.

■ At a minimum, the bankruptcy rules must be interpreted as requiring that a challenge to a proof of claim assert a basis for its disallowance or reduction under 11 U.S.C. § 502(b)—the existence of at least a potential dispute—before the procedures governing the determination of disputes in the claims allowance process are even invoked. This conclusion follows in the first instance from the application of 11 U.S.C. § 501, which permits the filing of a proof of claim, 11 U.S.C. § 502(a), which provides that a filed proof of claim is deemed allowed unless there is an objection, and 11 U.S.C. § 502(b), which specifies the grounds on which a claim is to be disallowed. None of these provisions requires the attachment of documentation to a proof of claim or disallowance in its absence.

This conclusion also follows from Rule 1001, which provides, "These rules shall be construed to secure the just, speedy, and inexpensive determination of every case and proceeding." A bankruptcy case imposes burdens on creditors. The obvious economic loss through total or partial discharge of debt, of course, is a necessary and expected consequence of the relief that the Bankruptcy Code provides for debtors. But that injury need not be compounded by imposing unnecessary costs on creditors who desire to participate fairly in the process. Given the uncertainties of eventual recovery in a given bankruptcy case, many creditors may have no economic incentive to respond to an objection to a claim even if the claim is valid; the expense of doing so may easily exceed the potential return. Rule 1001's directive requires a bankruptcy court to apply the bankruptcy rules to permit creditors to realize their fair share in a bankruptcy case without unnecessary expense. If there is no underlying dispute about the validity or amount of a proof of claim, there is no legitimate reason to penalize a holder because it does not meet all the technical requirements of the bankruptcy rules that are designed to govern the fair determination of disputes; Rule 1001 requires denial of an objection to an undisputed claim based solely on inadequate documentation.

Simply put, it is not fair to a creditor to sustain an objection to its proof of claim based on inadequate documentation unless the objecting party alleges some basis for objecting on grounds that would require disallowance or reduction under § 502(b).

IV. AMENDMENT OF PROOFS OF CLAIM

■ The Court considers next whether it should enforce Rule 3001's provisions by requiring the claimants to amend their proofs of claim with sufficient documentation, the approach of the court in *In re Blue*, 2004 WL 1745786 (N.D.Ill. Jul. 30, 2004). Such a ruling would respond to the concerns expressed by the debtor and others that the filing of inadequate proofs of claim may lead to abuses in the bankruptcy process. In this regard, the debtor asserts that a claimant should be required to attach minimum documentation, such as copies of the original contract, monthly billing statements, and transaction receipts, to enable the debtor "to review the

claim and track those charges which are valid and acceptable in the bankruptcy forum." (Objection 4–5). (Elsewhere, however, the debtor states that an acceptable attachment would be a one page monthly statement. *Id.* at 7). The debtor continues (*id.* at 5):

> To require less than this amount invites claims which cannot be verified and an opportunity for creditors to inflate their claims with unsubstantiated fees and costs.

> The form of the existing claims filed by Creditors deny the Court, the Trustee, and the debtor the opportunity to determine the validity of the claim and the extent to which the amount of the claim may be accurate. Debtors, by their nature, are typically unsophisticated consumers who lack the knowledge and ability to understand credit transactions, average daily balance computations, and what is precisely the proper method to determine accrued interest on an account. While the debtor should remain vigilant, it is an unfair burden to impose on the debtor to maintain the regular records of all his revolving account transactions and to understand the finer points of revolving credit transactions.

> Creditors essentially invite an objection to the claim and increase the burden on the Courts, the trustees, and the debtor and debtor's counsel by furthering the complexity of the case, requiring additional motions and expenses to be paid by the trustee and debtor. Such is an unfair burden to impose on the debtor.

One commentator succinctly states the policy argument from the debtor's perspective as follows, John Rao, *Debt Buyers Rewriting of Rule 3001: Taking the "Proof" Out of the Claims Process,* ABI JOURNAL, July/August 2004, at 16, 63:

> When claims based on a writing are submitted without documentation and without itemization, the purpose of Rule 3001 is subverted as the parties charged with policing the claims process are denied necessary information. In addition, affording *prima facie* validity to such claims can only "lead to abuses of the claim system." [*In re Circle J Dairy,* 112 B.R. 297, 301 (W.D.Ark.1989).] Strict compliance with Rule 3001 is necessary to ensure that an appropriate "sifting process" occurs in the evaluation of claims, otherwise "unmeritorious or excessive claims might dilute the participation of the legitimate claimants." [*Gardner v. State of New Jersey,* 329 U.S. 565, 67 S.Ct. 467, 91 L.Ed. 504 (1947).]

This commentator further makes the anecdotal observation that "objections to debt buyers' unsubstantiated claims are often followed up with an amended claim at a lower amount in which questionable fees are removed." *Id.* at n. 12.

The problem with requiring creditors to attach documentation in response to an objection that identifies no other potential grounds for disallowance or reduction of a claim is that it serves no purpose. If there is no substantive objection to the claim, the creditor should not be required to provide any further documentation of it.

Routinely requiring creditors to attach documentation as a condition to allowance of otherwise allowable claims is an invitation to abuse and more litigation. A creditor who does not respond by attaching documentation (a very real possibility in view of the cost of doing so versus the possible returns, as discussed above) may have an allowable claim denied. A response may generate further disputes over how much documentation is sufficient. Once there is a determination that the documents are sufficient, the debtor might

or might not determine there is a basis for disallowance or reduction of a claim. If the objection continues, a hearing will be scheduled, evidence will be presented, and the court will make a decision.

In these circumstances, the focus of the claims litigation, at least in its initial stages, becomes compliance with a technical pleading requirement, not the proper amount, if any, due on the merits. In the absence of an underlying dispute about the claim, no one, including the Court, is paying any attention to whether the claim is actually owed until a persistent creditor meets its burden of responding to the objection with documents that satisfy Rule 3001.

Proceeding in such a manner is not the way to fairly and justly administer a bankruptcy system or to efficiently and economically resolve *disputes* over allowance of claims. Creditors who have valid claims denied in such circumstances or creditors who finally have their claims allowed at some additional expense and burden will have little confidence in the integrity or fairness of the bankruptcy process.

■ The fundamental purpose of the claims allowance process and the various rules for filing of proofs of claim and allocating burdens of proof is to provide a fair and inexpensive procedure for the proper determination of claims on the merits. Those rules and procedures are not properly invoked with regard to a claim unless there is an actual or potential dispute about the debtor's liability *vel non* or its amount. The bankruptcy rules contemplate resolution of objections to claims as contested matters, not as adversary proceedings. Thus, they envision much simpler, expedited proceedings without all the trappings of normal civil litigation. They do not envision the determination of claims based on procedural technicalities such as whether a proof of claim includes adequate

documentation or whether a creditor on 30 days notice may be "put to its proof" in the absence of any indication that there is, in fact, a bona fide controversy over the amount of the debt.

■ Rule 9011 of the Federal Rules of Bankruptcy Procedure requires, among other things, that a paper in a bankruptcy case not be filed "for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation"; that the claims or defenses therein be "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law"; and that factual allegations "have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." FED. R. BANKR. P. 9011(b)(1), (2), (3). Although the objections in this case meet these standards (because the *Henry* case supplies appropriate legal grounds for asserting them), the Court interprets Rule 9011 as requiring that an objection to a claim be based, in the first instance, on some theory that there is a ground for disallowance or reduction under 11 U.S.C. § 502(b). For the same reason, Rule 9011 precludes invocation of the Court's process to require a creditor to provide documentary support for a claim in the absence of a good faith basis for inquiry into the claim or a dispute about its validity or amount.

■ Moreover, the good faith requirement for confirmation of a chapter 13 plan, 11 U.S.C. § 1325(a)(3), requires that a debtor not proceed to object to claims that she admittedly owes based on an amendable pleading deficiency. If there is no dispute about a claim or a good faith need for inquiry into its validity or amount, a

chapter 13 debtor has no business seeking additional documentation for it.

In summary, the debtor has made no showing that there is an actual dispute over any of the claims and has identified no good faith basis for a potential dispute. For all of the reasons set forth above, the Court will not require the claimants to amend their proofs of claim to attach sufficient documentation in compliance with Rule 3001(c).

 If the debtor thinks that every one of the challenged claims is overstated, that every claimant has included illegal or unauthorized charges, or that for any reason she has no liability to any of them, she may investigate fully her theories and raise every viable claim or defense that she has. If the debtor requires documentation to make a good faith inquiry into the existence or amount of any liability and a claimant refuses a legitimate request to produce it, an objection that asserts her good faith challenge and requests disallowance of the claim due to inadequate documentation would be appropriate and could well result in entry of an order disallowing the claim or requiring its amendment. Of course, at a hearing on a substantive objection to a proof of claim that lacks sufficient documentation, a claimant who fails to amend the proof of claim to include adequate documentation will have the burden of going forward as well as the ultimate burden of proof to establish its claim because the proof of claim would not be entitled to the Rule 3001(f) presumption of validity.

 But if the debtor thinks, for example, in accordance with her sworn statement in Schedule D in this case, that she owes First North American National Bank only $1,776.00 on the proof of claim filed by its assignee for $12,992.72, the proper objection is that the claimant has not established anything in excess of the amount the debtor admits is owed, not a request for complete disallowance of the claim merely because of inadequate documentation. And when claims such as those of Verizon Wireless and Capital One are filed for amounts less than the debtor shows in her schedules, there is no proper basis for an objection based on inadequate documentation at all.

The debtor and others suggest that creditors or claims buyers as a matter of routine practice file unlawful claims that improperly include postpetition interest or unauthorized charges. If this happens, there should be a remedy for it. There is no evidence, however, that the claimants in this case, or creditors or claims buyers generally, routinely file such overstated claims. The Court notes that federal criminal law provides a penalty of up to $500,000 or imprisonment of up to five years or both for the filing of a fraudulent proof of claim in a bankruptcy case, 18 U.S.C. §§ 152, 3571, and that Official Form 10 explicitly warns creditors about these provisions. The Court takes these provisions seriously and assumes that entities and individuals filing claims on their behalf do so as well. These criminal sanctions, as well as other sanctions available under the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure, are the proper remedies to be applied to creditors or their assignees who routinely file unlawful claims. A bankruptcy court's conclusion in a single case that a creditor or assignee has abused the bankruptcy process pursuant to a regular practice of filing claims for improper amounts could have severe consequences for such a claimant, not only in that case but in others in which the claimant has filed a claim. Thus, creditors or their assignees filing overstated claims in the expectation that the claims will not be scrutinized or that their amendment when they are caught

will remedy any problems that are discovered do so at their peril.

Creditors filing claims in bankruptcy cases should not take this ruling as an invitation to withhold information or documents about their claims when an objecting party has a proper basis for requesting them. A debtor or other objecting party (such as a trustee) is clearly entitled to receive documentation and other information about a creditor's claim if there is a question about it. The Court expects creditors who file proofs of claim like the ones in this case to respond promptly and fully to an appropriate request for information; if their failure to do so precludes an objecting party from determining the debtor's liability or amount thereof, then an objection asserting same will be appropriate. In the context of a legitimate basis for questioning a claim and an appropriate request, formal or informal, for supporting documentation, a creditor who stands on an unadorned proof of claim such as the ones in this case may well find itself with a disallowed claim. (In this regard, the Court notes that eCast's proofs of claim offer to provide supporting documentation on request of an interested party and provide a telephone number for requesting it. The debtor's objection does not indicate that she requested documentation and that it was denied.)

Nevertheless, the mere suggestion of possible abuse, with nothing presented to support such an accusation, does not justify imposition of a general rule requiring a creditor to provide extensive documentation when there is otherwise no dispute about a claim and, therefore, no reason for requiring the documentation. Because the debtor has not alleged any potential dispute here, the Court will not require the claimants in this case to amend their proofs of claim.

## V. CONCLUSION

There is a common thread in the analysis of issues in this case: Bankruptcy litigation should be about determining disputes on the merits, not precluding one party or another from litigating on the merits because of the technical application of some procedural rule for which there is no reason. Thus, if a debtor has objections to a claim on the merits, confirmation of a plan should not bar the determination of the proper amount owed. On the other hand, if a debtor does not have a basis for objecting to a claim on the merits or a need for documents to conduct a good faith inquiry into a claim, the claim should not be disallowed merely because documentation is not attached.

For the reasons stated above, the debtor's objections to claims are dismissed, without prejudice.

### APPENDIX

| No. | Claimant (Original Creditor) | Amount of Claim | Amount Scheduled | Attachment |
|---|---|---|---|---|
| 2 | Sherman Acquisition LP (Sears) | 4,111.08 | 3,258.00 | "Account Detail" states name of debtor, claimant, original creditor, account number, and amount of claim |
| 3 | FDS Bank—Richs c/o TSYS Debt Mgmt., Inc.* | 796.21 | 640.00 | No attachment |
| 6 | Sherman Acquisition LP (Citibank, N.A.) | 4,718.01 | *** | "Account Detail" states name of debtor, claimant, original creditor, account number, and amount of claim |

| | | | | |
|---|---|---|---|---|
| 7 | eCast Settlement Corp.<br><br>(GE Private Label/Sam's Club) | 837.85 | 780.00 | "Accounting summary" states name of debtor, original creditor, redacted account number, and statement that the amount is the balance due as of the filing date |
| 8 | eCast Settlement Corp.<br><br>(GE Private Label/Home Depot) | 1,039.54 | 935.00 | "Accounting summary" states name of debtor, original creditor, redacted account number, and statement that the amount is the balance due as of the filing date |
| 9 | B–Line, LLC/Collect America/First North American National Bank ** | 12,992.72 | 1,776.00 | "Account Summary" states name of debtor, amount due. |
| 11 | Sherman Acquisition LP<br><br>(Associates Credit Card Services, Inc.) | 673.08 | *** | "Account Detail" states name of debtor, claimant, original creditor, account number, and amount of claim |
| 12 | Capital One * | 3,594.91 | 3,956.00 | No attachment |
| 13 | Verizon Wireless GA **** | 75.53 | 76.00 | No attachment |

* The Court cannot determine whether the entity that filed these two claims, TSYS Debt Mgmt., Inc., did so as an authorized agent of the original holders or as the current holder of the claim by assignment.

** This is the name as stated on the proof of claim form. The Court assumes that the claim was originally held by First North American National Bank.

*** The schedules do not reflect debts in the names of these creditors. The Court cannot determine whether the debts are listed under another name, whether the debtor failed to schedule the debts, or whether the holders filed proofs of claim for debts that the debtor does not owe.

**** The Court fails to see any legitimate reason that the debtor, having scheduled a claim for $76.00, would object to its allowance for $75.53 under any circumstances.