# In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 03-2735, 03-2766

VOICES FOR CHOICES, *et al.*,

*Plaintiffs-Appellees,*

v.

ILLINOIS BELL TELEPHONE CO., *et al.*,

*Defendants-Appellants.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
Nos. 03 C 3290, 03 C 3643—**Charles P. Kocoras**, *Chief Judge.*

SUBMITTED JULY 23, 2003—DECIDED AUGUST 6, 2003

POSNER, *Circuit Judge*, in chambers. I have before me motions for leave to file amicus curiae briefs. Fed. R. App. P. 29. The status of the movants impel me to state publicly my reasons for denying the motions.

The defendants, telephone companies that do business in Illinois and that I shall refer to jointly as "SBC," appeal from the district court's decision that portions of the Illinois Public Utilities Act are preempted by the provisions of the Federal Telecommunications Act of 1996 that require owners of telecommunications network infrastructure, like SBC, to grant access to their networks by compet-

ing carriers on "rates, terms, and conditions that are just, reasonable and nondiscriminatory." 47 U.S.C. § 251(c)(2)(D). The district court found that the Illinois statute conflicts with the federal act in two respects. It instructs the Illinois Commerce Commission to determine fill (the percentage of the network capacity that is being utilized), and depreciation costs on the basis of SBC's actual costs, ignoring the Federal Telecommunications Act's "hypothetical efficient provider" standard. And it amounts to "rate-setting," an activity that the federal act requires to be performed by state administrative bodies like the Illinois Commerce Commission rather than by the state legislature itself.

SBC's brief on appeal argues that the Federal Telecommunications Act does not deprive the state legislature of the power to adopt standards for rate-setting, that the district court's ruling is contrary to the general principles governing preemption, that anyway the standards adopted by the legislature for fill and depreciation are consistent with federal pricing rules, and that the district court improperly substituted its own view for that of the Illinois legislature in concluding that the public interest would not be served by the leasing rates that the Illinois statute would permit. The brief is long (58 pages) and comprehensive, despite which there are these two motions for leave to file amicus curiae briefs. The first, submitted jointly by Michael J. Madigan, Speaker of the Illinois House of Representatives, and Emil Jones, Jr., President of the Illinois Senate, claims that their proposed amicus curiae brief "presents the opportunity for the Court to consider certain issues from the viewpoint of state officials who play an instrumental role in establishing telecommunications policy for the States." The brief argues that the Federal Telecommunications Act preserves the legislature's plenary authority to set rate-making policy

and that the district court failed to consider all the pertinent evidence in the record in concluding that the Illinois statute conflicts with the federal statute. The second brief is submitted by the Communications Workers of America, which represents more than half a million workers in the telecommunications industry, including employees of SBC. The union asserts that the Illinois statute was intended to remedy problems attributable to artificially low lease rates, including employee layoffs and decreased services to customers, that the legislature can adopt standards for rate setting without violating the Federal Telecommunications Act, and that the district court was mistaken to think that rates are to be set only in adjudicative proceedings before the Illinois Commerce Commission.

This court has held that whether to allow the filing of an amicus curiae brief is a matter of "judicial grace." *National Organization for Women, Inc. v. Scheidler*, 223 F.3d 615, 616 (7th Cir. 2000). The judges of this court will therefore not grant rote permission to file such a brief, and in particular they will deny permission to file an amicus brief that essentially duplicates a party's brief. *Id.* at 617. The reasons for the policy are several: judges have heavy caseloads and therefore need to minimize extraneous reading; amicus briefs, often solicited by parties, may be used to make an end run around court-imposed limitations on the length of parties' briefs; the time and other resources required for the preparation and study of, and response to, amicus briefs drive up the cost of litigation; and the filing of an amicus brief is often an attempt to inject interest group politics into the federal appeals process. *Id.* at 616.

All this said, comity might seem to be a compelling reason to allow the filing of an amicus curiae brief by the leaders of a state legislature in an appeal concerning the validity of

a statute of their state; and there is no doubt that a union has an interest in the regulatory regime for an employer of its members. It might be argued therefore that I should not trouble myself to determine whether the proposed amicus curiae briefs fill gaps in or otherwise productively supplement the parties' briefs. No doubt many courts would reason so, or would prefer to ignore amicus curiae briefs than to screen them. But in my view the argument from comity bespeaks a misunderstanding of the difference between the legislative and the judicial processes. The legislative process is democratic, and so legislators have an entirely legitimate interest in determining how interest groups and influential constituents view a proposed statute. Statutes pass because there is more political muscle behind than in front of them, not because they are "wise" or "just," though they may be. The judicial process, in contrast, though "political" in a sense when judges are asked to decide cases that conventional legal materials, such as statutory and constitutional texts and binding precedent, leave undetermined, so that some mixture of judges' values, temperament, ideology, experiences, and even emotions is likely to determine the outcome, is not democratic in the sense of basing decision on the voting or campaign-financing power of constituents and interest groups. An appeal should therefore not resemble a congressional hearing.

The fact that powerful public officials or business or labor organizations support or oppose an appeal is a datum that is irrelevant to judicial decision making, except in a few cases, of which this not one, in which the position of a nonparty has legal significance. And even in those cases the position can usually be conveyed by a letter or affidavit more concisely and authoritatively than by a brief.

No matter who a would-be amicus curiae is, therefore, the criterion for deciding whether to permit the filing of an amicus brief should be the same: whether the brief will assist the judges by presenting ideas, arguments, theories, insights, facts, or data that are not to be found in the parties' briefs. The criterion is more likely to be satisfied in a case in which a party is inadequately represented; or in which the would-be amicus has a direct interest in another case that may be materially affected by a decision in this case; or in which the amicus has a unique perspective or specific information that can assist the court beyond what the parties can provide. *National Organization for Women, Inc. v. Scheidler, supra*, 223 F.3d at 616-17; *Ryan v. CFTC*, 125 F.3d 1062, 1063 (7th Cir. 1997) (chambers opinion); *Georgia v. Ashcroft*, 195 F. Supp. 2d 25, 32 (D.D.C. 2002). In my experience in two decades as an appellate judge, however, it is very rare for an amicus curiae brief to do more than repeat in somewhat different language the arguments in the brief of the party whom the amicus is supporting. Those who pay lawyers to prepare such briefs are not getting their money's worth.

While the amicus briefs sought to be filed in this case contain a few additional citations not found in the parties' briefs and slightly more analysis on some points, essentially they cover the same ground the appellants, in whose support they wish to file, do. (The state legislators' brief is a mere seven and a half pages long.) This is not a case in which a party is inadequately represented, or the would-be amici have a direct interest in another case that may be materially affected by a decision in this one, or they are articulating a distinctive perspective or presenting specific information, ideas, arguments, etc. that go beyond what the parties whom the amici are supporting have been able to provide. Essentially, the proposed amicus briefs merely announce the "vote" of the

amici on the decision of the appeal. But, as I have been at pains to emphasize in contrasting the legislative and judicial processes, they have no vote.

So saying, I intend no criticism of the movants and in particular no disrespect to Illinois's senior legislative leaders. Nor do I mean to equate states with private persons as would-be participants in litigation in which they are not named as parties at the outset and perhaps do not wish to become parties. A state is entitled to file an amicus curiae brief without leave of court. Fed. R. App. P. 29(a). But Messrs. Madigan and Jones do not purport to be representing the state; nor is their brief signed by the state's attorney general; and they sought leave to file it, which a state need not do. The state could have intervened in the litigation as a matter of right, 28 U.S.C. § 2403(b), but has not done so—maybe the reason it didn't do so is that the state is *already* a party, because the commissioners of the Illinois Commerce Commission were named as defendants in the case, although the district court granted their motion to be declared nominal parties and to be excused from briefing and pleading requirements and only SBC filed a notice of appeal.

There is something to be said for asking the state to speak in litigation with one voice. And insofar as the district court in the decision that has been appealed placed limitations on what a state legislature may do, not only in this case but presumably in any like case that should arise in the future, it might seem that the leaders of the legislature have a direct interest in other cases, one of the situations in which amicus participation is appropriate. But that argument would imply that *any* state legislator should have a right to file an amicus curiae brief when the constitutionality of state legislation is challenged—an extreme position that could invite a blizzard of briefs.

The "viewpoint of state officials" to which the Madigan-Jones brief refers does not appear to be any different from that of SBC. Naturally the legislative leaders wish to preserve the prerogatives of state legislatures against federal constitutional challenge, but SBC has the same goal and has briefed the issue more than adequately.

For the reasons explained, the motions for leave to file amicus curiae briefs are

DENIED.

A true Copy:

      Teste:

 

                    _____

                    *Clerk of the United States Court of*
                    *Appeals for the Seventh Circuit*