[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

Nos. 02-16708 & 02-16949

_____

D. C. Docket Nos. 01-01268-CV-T-N
01-01269-CV-T-N

**FILED**

**U.S. COURT OF APPEALS**
**ELEVENTH CIRCUIT**
**October 10, 2003**
**THOMAS  K. KAHN**
**CLERK**

STEPHEN R. GLASSROTH,

Plaintiff-Appellee,

versus

ROY S. MOORE,
Chief Justice of the Alabama Supreme Court,

Defendant-Appellant.

--------------------------------------

MELINDA MADDOX,
BEVERLY J. HOWARD,

Plaintiffs-Appellees,

versus

ROY S. MOORE, in his official capacity
as Administrative Head of the Alabama
Judicial System,

Defendant-Appellant.

_____

Appeals from the United States District Court for the
Middle District of Alabama

_____

**(October 10, 2003)**

Before EDMONDSON, Chief Judge, CARNES, Circuit Judge, and STORY[*],
District Judge.

CARNES, Circuit Judge:

The plaintiffs are prevailing parties in this 42 U.S.C. § 1983 case, and for

that reason they are entitled to reasonable fees and expenses under 42 U.S.C. §

1988(b).  Pursuant to 11th Cir. R. 39-2, they have filed a timely application for

fees and expenses in connection with their successful defense in this Court of the

judgment they obtained in the district court.  See  Glassroth v. Moore, 335 F.3d

1282 (11th Cir. 2003). They request a total of $76,109 in fees and $1731 in

expenses.

The amount of the plaintiffs' request is not opposed by the defendant, Chief

Justice Moore.  He has not filed anything in this Court in response to their

application, even though our Rule 39-2(c) gave him an absolute right to do so

within ten days after service of the plaintiffs' application on him, which occurred

_____

[*]Honorable Richard W. Story, United States District Judge for the Northern District of
Georgia, sitting by designation.

on August 4, 2003. Ordinarily, we grant in full applications for fees and expenses to which no objection has been filed, the assumption being that in our adversary system of justice opposing parties can be counted on to look out for their own fiscal well-being and to complain if the requested fees and expenses are out of line. But this is not an ordinary case in that respect.

Chief Justice Moore was sued in his official capacity, which means that the State of Alabama is responsible for paying any attorney's fees and expenses that are imposed against him. He is not, however, being represented by the Office of the Attorney General but instead by counsel of his own choosing, who at the beginning of this litigation were designated as deputy attorneys general, see Ala. Code § 36-15-1 (last para.), solely for the purpose of defending him in this litigation. As a result, this is not the usual case where the defense of a lawsuit against an official of the State of Alabama is being handled by its Attorney General or by attorneys chosen by him.

Nor is this a case where the state official being sued seems very mindful of the state's interest in its funds, an interest which is directly implicated by the application for fees and expenses that is before us. The Chief Justice's earlier failure to request in a timely fashion a stay of our judgment affirming the district court, followed by his publicly announced intention to defy that court's order with

3

full knowledge that doing so could cost the State of Alabama hundreds of millions of dollars, raises doubts about his dedication to the well-being of the public fisc. If any more evidence is needed on the matter, it is here in the form of the Chief Justice's inexplicable failure to object to any part of the plaintiffs' application for fees and expenses, although at least one part (and perhaps more) is objectionable. Given these unusual circumstances, and because we are reluctant to risk having public funds used to pay more fees and expenses than the law requires, we think that the proper course of action is to remand this application to the district court with directions.

On remand, the Attorney General should be given an opportunity to appear regarding this application and to make any objections he deems appropriate, and be allowed to participate in any proceedings to determine reasonable amounts that should be paid. The district court may also deem it advisable to give the Attorney General the same opportunity in regard to any application for fees and expenses that is filed in connection with the litigation of this case in the district court, but that matter is not now before us.

While we leave to the district court initially the decision about the exact amount to be awarded plaintiffs for their appellate level attorney's fees and expenses, some of the hours for which they seek compensation should be

4

disallowed.  The district court ought not allow the plaintiffs any compensation for time their counsel spent in connection with amicus briefs supporting their position. The plaintiffs' fee application includes a request for reimbursement for work that lead counsel for the plaintiffs, Ayesha N. Khan, did in relation to a number of amicus briefs filed in support of plaintiffs' position.[1]  Her time records indicate that she spent that time enlisting various organizations to appear as amici; suggesting potential signatories for the briefs; working on, supervising, and reviewing the amicus briefs; and seeing that they were mailed on time.

It comes as no surprise to us that attorneys for parties solicit amicus briefs in support of their position, nor are we shocked that counsel for a party would have a hand in writing an amicus brief.  In fact, we suspect that amicus briefs are often used as a means of evading the page limitations on a party's briefs.  See Voices for Choices v. Illinois Bell Tel. Co., 339 F.3d 542 (7th Cir. 2003) (Posner, J., in chambers) ("[A]micus briefs, often solicited by parties, may be used to make an end run around court-imposed limitations on the length of parties' briefs.").  Even

---

[1]The application form accompanying the request for fees and expenses shows 5.5 hours for "Work re. amicus briefs," but the more detailed time activity record accompanying it lists a total of 8.8 hours that are clearly identified as time spent rounding up amici and supervising the production and filing of amicus briefs on behalf of plaintiffs.  We leave it to the district court to sort out that discrepancy in order to ensure that no fees are paid for time spent in connection with amicus briefs supporting plaintiffs' position.

where such efforts are successful, however, they should not be underwritten by the other party. An organization or group that files an amicus brief on the winning side is not entitled to attorney's fees and expenses as a prevailing party, because it is not a party. We will not allow that result to be changed by the simple expedient of having counsel for a party do some or all of the amicus work. To pay a party for such work would encourage the practice, which we are loathe to do. The district court should not award plaintiffs any attorney's fees or expenses for work done in connection with supporting amicus briefs. (A reasonable amount of time spent reading and responding to opposing amicus briefs is, of course, compensable.)

While we have the case before us, we also add some observations about two factors the district court ought to consider in determining whether the total number of appellate level hours for which plaintiffs seek attorney's fees is reasonable or unreasonably high. They seek payment from the State for approximately 215 hours on the brief, nearly 90 hours related to oral argument, and about 15 hours in connection with the fee application.[2]

---

[2]These numbers do not include the hours counsel have included in their application for work done on amicus briefs in support of plaintiffs' position, which we have already noted should not be allowed. The total number of hours for which they have requested payment for their appellate work thus far is precisely 326.2.

Plaintiffs' application tells us that three attorneys who worked on their brief and assisted

6

One of those factors is that Ms. Khan, who served as lead counsel for plaintiffs in the appeal, is an expert in this area, and we mean "this area" with particularity. She is an expert not only as to the Establishment Clause in general, but also as to Ten Commandments displays in particular. The declaration she has filed in support of the fee application tells us that Ms. Kahn has specialized in civil rights and civil liberties litigation for more than a decade, serving as counsel in complex litigation in state and federal court. For the past five years she has focused her work exclusively on church-state litigation, serving as counsel in Establishment Clause cases around the country, including seven cases involving government-sponsored Ten Commandments displays. With that kind of experience comes knowledge, efficiency, and self-confidence, which should reduce the number of hours necessary for the task. A legal team headed by Ms. Kahn should have taken fewer hours to handle this case on appeal than one without the benefit of her expertise.

Beyond the expertise of lead counsel, there is another factor the district court should consider in determining whether the number of hours for which

---

Ms. Kahn in preparing for oral argument "opted, as an exercise of billing judgment, not to seek reimbursement for their time in this application." We appreciate that fact, but on remand the district court should determine whether the attorneys who did opt to seek reimbursement for their time should have exercised more billing judgment.

compensation is requested may be too high. The time that should be devoted to a case varies directly with the difficulty of the case. It takes more time and effort to stalk beasts in the backwoods than it does to shoot fish in a barrel. Whatever may have been the situation when this lawsuit was filed, by the time it reached the appellate stage – after Chief Justice Moore had testified and the district court had made detailed factfindings – not much stalking by plaintiffs' counsel was required. Given the well-established Lemon test, which is binding on us, and the settled facts, this case was not a hard one, and it was not difficult for plaintiffs to defend their judgment at this level.

Apparently anticipating that we might have some concerns that the claimed hours exceeded the difficulty of the task, Ms. Kahn tells us in her declaration that this case was "well out of the ordinary" for government-sponsored Ten Commandments displays. That is so, she explains, because some of the contentions that Chief Justice Moore and his attorneys raised were ones she had never encountered before. We do not doubt that. Nonetheless, it should not have taken much time to find controlling precedent foreclosing those unusual contentions, such as Chief Justice Moore's argument that the Establishment Clause applies only to legislation, see Glassroth, 335 F.3d at 1293-94, his argument that the Ten Commandments are not religious in nature, id. at 1294-95,

8

and his argument that he can do as he pleases regardless of federal court decisions to the contrary, id. at 1302-03.

We should not be misunderstood. We are not implying that plaintiffs' counsel did not spend at the appellate stage of this case all the hours they represent that they did. However, the issue is the number of hours that reasonably should have been spent. It is not unusual for attorneys to spend more time on a case than it reasonably requires. We see that regularly, and it is one reason why applications for attorney's fees to be paid by the other party are reviewed by courts. Finally, we do not mean to imply that Ms. Kahn and her co-counsel did not do an excellent job in representing their clients in this Court. They did, and we found their brief and oral argument helpful.

To reiterate, a specific determination of how much in attorney's fees and expenses the State of Alabama must pay plaintiffs should be made in the first instance by the district court in a proceeding involving counsel who is dedicated to the proposition that the state taxpayers should not pay more than the law requires, which is a reasonable amount of fees and expenses. The district court should give the Attorney General an opportunity to appear as counsel for that purpose. We direct the district court not to allow the payment of any fees and expenses for work that plaintiffs' counsel did in connection with supporting amicus briefs, and to

consider the two factors we have mentioned. Of course, nothing we have said

prevents the plaintiffs and the Attorney General from settling this fee matter

through negotiations.[3]  If they do not settle, the district court can decide the matter

when it determines the fees and costs due to the plaintiffs for the trial of this case.

**REMANDED WITH DIRECTIONS.**

---

[3]Nor does anything we have said prevent the Attorney General from agreeing to the plaintiffs' fee request, minus the amount sought for work done on supporting amicus briefs.  The Attorney General might do so either because he thinks that the resulting request is reasonable, or because he comes to the informed conclusion that opposing the request would cost more than it would save.  This option should alleviate concerns that the remand will needlessly increase the number of compensable hours and the final amount of the award.   Whether or not the Attorney General ultimately decides to oppose some part of the remaining request, we want to be confident that the people of Alabama have had someone who is definitely dedicated to advocating their fiscal interests cast a skeptical eye on the plaintiffs' fee application and decide what to do about it.

STORY, District Judge:

I agree with the majority's decision not to allow any attorney's fees or expenses for work done in connection with supporting amicus briefs. However, I would simply deduct those fees and expenses from the fee application and award the balance. I would not remand the matter for further review by the district court.

The fee application was unopposed. In the ordinary course, the application would have been approved by this Court, and fees would have been awarded as requested. See 11th Cir. R. 39-2 (permitting party opposing fees to file an objection and requiring such objections to be filed within ten days after service of the fee application); see also ACLU v. Barnes, 168 F.3d 423, 428 (11th Cir. 1999) ("Those opposing fee applications have obligations, too."). The majority finds that this case is not an ordinary case and is deserving of special treatment. First, the majority points out that the Attorney General of Alabama is not representing the Chief Justice, and thus, he has not had the opportunity to protect the interests of the citizens of Alabama. I disagree. Though the Attorney General did not select the Chief Justice's attorneys, he approved them and appointed them as Deputy Attorneys General. Ala. Code § 36-15-1. Moreover, the Attorney General's actions make clear that even though he was not directly involved in the case through the appeal to this Court, he has been aware of the procedural history

11

of the case.  When the State of Alabama faced sanctions of "hundred of millions of dollars" for defying the district court's order to remove the monument, the Attorney General was involved in the process that resulted in the removal of the monument.  The fact that the Chief Justice intended to allow the state to suffer those financial sanctions should have given the Attorney General ample warning that he needed to watch out for the interests of Alabama's taxpayers.  To assume that this same litigant would zealously fight a few thousand dollars of attorney's fees was not reasonable.  If the Attorney General wished to be heard on this issue, he should have intervened in a timely manner.  His failure to intervene suggests to me that he does not wish to do so.

Second, the majority suggests that the Chief Justice is not "very mindful of the state's interest in its funds."  Although the Chief Justice's actions in response to the threatened financial sanctions against the state for contempt support such a conclusion, I fear the majority is making an assumption that may ultimately harm, rather than help, the taxpayers of Alabama.  The Chief Justice and his attorneys know better than we the time and expense involved in this litigation.  An explanation for the lack of a response from the Chief Justice that is at least as plausible as that offered by the majority is that the Chief Justice and his attorneys

12

made an informed decision that Plaintiffs' request was not unreasonable.[1]  They know the fees and expenses incurred by the Chief Justice and are able to compare those to Plaintiffs' request.  In light of that knowledge, they may have chosen not to challenge the request.  The scenario that could result from the majority's decision is that after the case is heard on remand, the attorney's fee request is substantially unchanged except for the reduction for work on supporting amicus briefs.  Plaintiffs' attorneys would then be entitled to fees for defending their fee petition.  Thus, because of our gratuitous assistance, the taxpayers of Alabama would have spent more of their tax dollars than if we had simply deducted the work on the amicus briefs and approved the petition.

Lest this decision be misunderstood, I do not oppose protecting the interests of the innocent taxpayers of Alabama.  However, in this case, I am not sure the majority decision will ultimately benefit the taxpayers.  Furthermore, we are second-guessing the decisions of the two highest legal officers of the State of Alabama, the Chief Justice of the Supreme Court and the Attorney General.  Both of these officials were elected by the people of Alabama.  In my view, the people

---

[1]The majority points out that at least one part of the request was objectionable, *i.e.*, fees and expenses for work done in connection with supporting amicus briefs.  But in fairness to the Chief Justice and his attorneys, this Circuit had not previously held that such fees and expenses were unrecoverable.  Thus, the failure to raise this issue is not suspect.

of Alabama have spoken (or, in this case, chosen not to speak) through these elected officials. As with any other case when an unopposed fee application is submitted, I would deduct the fees that are inappropriate on their face and award the balance.