**In re Philip HEATH and Marlene Heath, Debtors.**

**Philip Heath;  Marlene Heath, Appellants,**

v.

**American Express Travel Related Services Company, Inc.;  American Express Centurion Bank;  MBNA America Bank N.A.;  David Y. Farmer, Chapter 7 Trustee, Appellees.**

**BAP No.  CC–04–1324–MoBMa. Bankruptcy No.  ND 03–10028–RR.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted June 22, 2005.

Filed Sept. 29, 2005.

Janet A. Lawson, Oxnard, CA, for Appellants.

Dennis C. Winters, Winters Law Firm, Santa Ana, CA, for Appellees.

Edwin J. Rambuski, San Luis Obispo, CA, for David Y. Farmer.

Before MONTALI, BRANDT and MARLAR, Bankruptcy Judges.

## OPINION

MONTALI, Bankruptcy Judge.

Debtors Philip and Marlene Heath ("Debtors") object that several holders of their credit card debt ("Creditors") did not attach sufficient documentation to their proofs of claim to comply with Rule 3001(c).[1] Debtors argue that the claims must be disallowed as a matter of law. We join numerous other courts which have discouraged this form of objection and disagree.

When a creditor files a proof of claim, that claim is deemed allowed under Sections 501 and 502(a). A proof of claim that lacks the documentation required by Rule 3001(c) does not qualify for the evidentiary benefit of Rule 3001(f)—it is not prima facie evidence of the validity and amount of the claim—but that by itself is not a basis to disallow the claim. Section 502(b) sets forth the exclusive grounds for disallowance of claims, and Debtors have introduced no evidence or arguments to establish any of those grounds. Accordingly, the bankruptcy court's order allowing Creditors' claims is AFFIRMED.

## I. FACTS

Debtors filed their voluntary Chapter 7 petition on February 10, 2003. Debtors' bankruptcy Schedule F (general unsecured claims) lists twelve credit card debts, without designating any of them as disputed,

---

1. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

unliquidated or contingent. Several holders of these credit card debts filed proofs of claim, all in slightly higher amounts than what Debtors listed in their Schedule F. Debtors filed objections to eight proofs of claim. A representative objection states:

> Debtor[s] object to the Proof of Claim of AMERICAN EXPRESS TRAVEL RELATED SERVICES CO. INC. ["Amex"] [in the amount of $242.49] on the grounds that no supporting writing is attached to it as required by the Federal Rules of Bankruptcy Procedure, Rule 3001(c). Under the terms of the rule the original writing or a copy of it must be attached to the proof of claim. If the writing is unavailable, an explanation to that effect must be attached. Under Rule 3001(f) a proof of claim that conforms to the rules is "prima facie evidence of the validity and amount of the claim". It follows then, that a claim not filed in conformity with the rules is NOT entitled to the evidentiary presumptions of validity and amount.

> \* \* \* \* \* \*

> The initial burden is on the creditor to file a proper claim. The debtor then has an opportunity to look at it and determine if it is the correct amount or not. Are late fees and interest correctly calculated? Are all of the charges proper?

> Unless the claim is properly amended, this objection should be sustained.

Debtors included an additional objection to this particular proof of claim and to one filed by American Express Centurion Bank ("Amex Centurion") for $6,250.90, because these Creditors altered the official proof of claim form ("Form 10"):

> There is nothing in the Bankruptcy Code or Rules which authorize this creditor to alter the Proof of Claim form to excuse compliance with the Rules. In paragraph 4 of the [proof of] claim the creditor claims it is too "unduly time consuming and burdensome" to produce the writing. Neither the Code or the Rules authorize it to require [D]ebtors to call [the attorneys for Amex and Amex Centurion] to get copies of the writing(s).

Amex and Amex Centurion filed a joint response and, after a reply by Debtors, a supplement with additional documentation (the "Amex Supplement"). Another Creditor, MBNA America Bank, N.A. ("MBNA"), mailed a letter to the bankruptcy court which was accepted for filing and docketed as a response to Debtors' objection.

No other Creditors responded. At a hearing on April 20, 2004, the bankruptcy court noted that Debtors had acknowledged the approximate amounts of their debts to Creditors on their bankruptcy schedules. It stated that "[a]dmissions on the schedules are evidence," "[i]t's more trouble [for most Creditors] to respond than the claim is worth," and Debtors were making "a blatant attempt to just get whatever monies there are" in what is projected to be, at least if Creditors' claims were disallowed, a "surplus" case. Transcript, April 20, 2004, pp. 2:9–17, 3:10–12, 5:4. It concluded that it would overrule one objection because the Creditor was served at the wrong address and would allow the remaining seven claims, reducing the amount of each to what was listed in the schedule. *Id.* p. 3:13–14. It entered a written order allowing those seven claims in the reduced amounts and, on Debtors' timely motion, it entered an order (the "Reconsideration Order") stating:

1. The claim of Citibank/Choice is subordinated per 11 USC § 726(a)(3) as it was filed late.

2. The Court declines to reconsider its order with respect to any other objection for the reasons set forth on

the record at the original hearing on April 20, 2004. The debtors are estopped to file objections inconsistent with their own schedules in order to prevent the sale of their [house].[2]

The bankruptcy court's rulings can be summarized as follows:

| Creditor | Proof of Claim | Allowed Amount (Schedule F Amount) |
|---|---|---|
| Bank of America, N.A. (USA) | $ 8,930.74 | $ 8,737.00 |
| Amex | $ 242.49 | $ 107.00 |
| Amex Centurion | $ 6,250.90 | $ 6,250.00 |
| Direct Merchants Credit Card Bank | $ 3,729.29 | $ 3,729.00 |
| Discover Bank | $ 8,290.55 | $ 8,290.00 |
| MBNA | $14,721.36 | $13,887.00 |
| Citibank, N.A. | $10,778.37 | $10,592.00 |
| (Claim of Citibank, N.A. held to be untimely and subordinated per 11 U.S.C. § 726(a)(3).) | | |

Debtors filed a timely Notice of Appeal from the Reconsideration Order, later amended to include more parties. Included as parties are the Chapter 7 Trustee David Farmer ("Trustee"), his attorney, and the United States Trustee (the "UST").

Of the seven Creditors, only Amex and Amex Centurion have participated in this appeal, and they have not cross-appealed from the reduction in their claims to the amounts listed on Debtors' Schedule F. Trustee has filed an "Amicus Curiae Brief" to which Debtors objected in their reply brief on the grounds that Trustee did not participate in the proceedings before the bankruptcy court and is not an agent of the UST. Trustee then filed a "Motion for Relief to File Brief of Amicus Curiae" (the "Amicus Motion") arguing that he is a party in Debtors' Chapter 7 case and represents the interests of all the unsecured creditors.

## II. ISSUES

1. May Trustee participate in this appeal?

2. Do Debtors' bankruptcy schedules estop them from objecting to the lack of support for Creditors' proofs of claim?

3. Did the bankruptcy court properly overrule Debtors' objections and allow Creditors' claims?

## III. STANDARDS OF REVIEW

The proper interpretations of statutes and rules are legal questions that we review de novo. *Kir Temecula v. LPM Corp. (In re LPM Corp.),* 300 F.3d 1134, 1136 (9th Cir.2002). Whether compliance with a given statute or rule has been established is generally a question of fact, which we review for clear error. *Ashford v. Consol. Pioneer Mortgage (In re Consol. Pioneer Mortgage),* 178 B.R. 222, 225 (9th Cir. BAP 1995) (compliance with Rule 3001

**2.** Debtors previously took other actions to oppose the sale of their house and the bankruptcy court apparently saw the same motivation in Debtors' objections to Creditors' claims. Although Debtor' motivation is irrelevant to our disposition, we note that their house has now been sold, notwithstanding Debtors' ef-

forts in this Chapter 7 case and a later Chapter 13 case (No. ND 04–11178 RR). We dismissed as moot an appeal (CC–04–1361) from an order in that Chapter 13 case granting Trustee relief from the automatic stay to proceed with an unlawful detainer action to obtain possession of the house.

is a question of fact reviewed for clear error), *aff'd,* 91 F.3d 151 (9th Cir.1996) (table).

■■■ "A bankruptcy court's denial of a motion for reconsideration of an allowance or disallowance of a claim under Section 502(j) and Rule 3008 is reviewed for an abuse of discretion." *Consol. Pioneer Mortgage,* 178 B.R. at 225 (citations omitted). Application of judicial or equitable estoppel is also reviewed for abuse of discretion. *U.S. ex rel Sequoia Orange Co. v. Baird–Neece Packing Corp.,* 151 F.3d 1139, 1147 (9th Cir.1998) (judicial estoppel); *Hoefler v. Babbitt,* 139 F.3d 726, 727 (9th Cir.1998) (equitable estoppel). We review the bankruptcy court's evidentiary rulings for abuse of discretion. *Latman v. Burdette,* 366 F.3d 774, 786 (9th Cir.2004).

■■ A bankruptcy court necessarily abuses its discretion if it bases its ruling upon an erroneous view of the law or a clearly erroneous assessment of the evidence. We also find an abuse of discretion if we have a definite and firm conviction that the bankruptcy court committed a clear error of judgment in the conclusion it reached. *Beatty v. Traub (In re Beatty),* 162 B.R. 853, 855 (9th Cir. BAP 1994) (citations and quotation marks omitted).

## IV. DISCUSSION

1. *Trustee's participation in this appeal*

■■ Debtors concede that Trustee is a party but argue that, because he did not participate in proceedings before the bankruptcy court, he does not have or has forfeited his right to argue the issues on appeal. We have found little authority on point and the Ninth Circuit appears to approach the issue on a case-by-case basis. *See Brady v. Andrew (In re Commercial Western Finance Corp.),* 761 F.2d 1329, 1334–35 (9th Cir.1985) (attendance and ob-

jection to proposed action "should *usually*" be prerequisites to fulfilling "person aggrieved" standard for appellate standing; noting scarcity of precedent) (emphasis added), *and compare Investors Thrift v. Lam (In re Lam),* 192 F.3d 1309 (9th Cir.1999) (declining invitation to abrogate procedural rules for creditor who defaulted and then did not appear before either bankruptcy court or BAP). *See generally* 15A Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction 2d* § 3902.1 (noting lack of clear standards). *Compare White v. Univision of Va., Inc. (In re Urban Broadcasting Corp.),* 401 F.3d 236, 243–44 (4th Cir.2005) (rejecting *Commercial Western Finance Corp.* and stating that "defining standing by whether an appellant has objected to an order or attended a hearing conflates basic notions of standing with notions of waiver and forfeiture").

We do not believe that Trustee lacks appellate standing or has waived his right to participate as a party. Trustee has a role in representing creditors in all cases, 11 U.S.C. §§ 323 and 704, and a special role in cases like this. The bankruptcy court cannot appear before us to defend its own ruling. Most creditors cannot be expected to participate extensively in Chapter 7 cases with few assets because the cost of doing so would likely outweigh the projected financial returns. Indeed, ordinarily Trustee would be the party with standing to litigate the allowance or disallowance of claims. *See In re Jorczak,* 314 B.R. 474, 479 (Bankr.D.Conn.2004) (debtors only have standing to object to claims where there is "a sufficient possibility" of a surplus to give them a pecuniary interest).

■ Alternatively, even if Trustee cannot appear as a party we will grant his Amicus Motion. Trustee did not move for leave before filing an amicus curiae brief, but he did file a brief entitled "Amicus

Curiae Brief" citing the appropriate rules and then filed his Amicus Motion belatedly in response to Debtors' reply brief. We will treat Trustee's timely brief as a combined brief and motion for leave to file that brief, supplemented by his belated Amicus Motion.[3] One circuit court has stated:

> An amicus brief should normally be allowed when a party is not represented competently or is not represented at all, when the amicus has an interest in some other case that may be affected by the decision in the present case (though not enough affected to entitle the amicus to intervene and become a party in the present case), or when the amicus has unique information or perspective that can help the court beyond the help that the lawyers for the parties are able to provide.

*Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997) (emphasis added). *Cf. Neonatology Assocs., P.A. v. C.I.R.*, 293 F.3d 128 (3d Cir.2002) (criticizing *Ryan* as too restrictive).

■ We express no opinion whether the Ninth Circuit would apply criteria as restrictive as the *Ryan* court, but if it did Trustee would qualify under one or more of those criteria. *Cf. Portland Fish Co. v. States S.S. Co.*, 510 F.2d 628, 634 (9th Cir.1974) (denying motion of several entities to file amicus briefs on rehearing, over dissent of one judge, based on factual distinction between prospective amici's and parties' interests). As we have observed, most Creditors are not represented on this appeal, Trustee has an interest beyond this one case in protecting legitimate claims from objections that lack merit, and Trustee has a unique perspective as a party that typically objects to claims while also attempting to maximize recovery for creditors with legitimate claims. For each of the above reasons, Trustee may participate in this appeal.[4]

---

**3.** 9th Cir. BAP Rule 8018(b)–1 calls for application of the Rules of the United States Court of Appeals for the Ninth Circuit and the Federal Rules of Appellate Procedure when the Federal Rules of Bankruptcy Procedure and the 9th Cir. BAP Rules are silent on the subject. Federal Rule of Appellate Procedure 29 provides in relevant part:

> 29. *Brief of an Amicus Curiae*
>
> (a) *When Permitted.* The United States or its officer or agency, or a State, Territory, Commonwealth, or the District of Columbia may file an amicus-curiae brief without the consent of the parties or leave of court. Any other amicus curiae may file a brief only by leave of court or if the brief states that all parties have consented to its filing.
>
> (b) *Motion for Leave to File.* The motion must be accompanied by the proposed brief and state:
>
> (1) the movant's interest; and
> (2) the reason why an amicus brief is desirable and why the matters asserted are relevant to the disposition of the case.
>
>     *     *     *     *     *     *
>
> (e) *Time for Filing.* An amicus curiae must file its brief, accompanied by a motion for filing when necessary, no later than 7 days

after the principal brief of the party being supported is filed. . . .
Fed. R.App. P. 29(a).

**4.** We would reach the same outcome on this appeal even without considering Trustee's brief. There is a minority view that where an amicus brief does not add entirely new material it should not be accepted. *See Voices for Choices v. Illinois Bell Telephone Co.*, 339 F.3d 542, 545 (7th Cir.2003). We reject that approach in this case because denying Trustee's Amicus Motion would present an additional hurdle to his participation in any further appeal, and that might prejudice the interests of the third party creditors whose interests Trustee is defending.

### 2. *Debtors' admissions in their schedule*

██ The bankruptcy court's written order overruling Debtors' objections referred to estoppel but did not specify what type of estoppel. We do not rely on judicial estoppel to affirm the bankruptcy court because the excerpts of record do not reflect any judicial reliance on Debtors' schedules. *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778, 783 (9th Cir. 2001) ("This court has restricted the application of judicial estoppel to cases where the court relied on, or 'accepted,' the party's previous inconsistent position."). Nor do we rely on equitable estoppel because no party to this appeal has argued that it relied to its detriment on Debtors' bankruptcy schedules or would be somehow prejudiced if Debtors were to amend Schedule F to reflect the existence of legitimate disputes that they might raise in their objections. *See The Alary Corp. v. Sims (In re Associated Vintage Group, Inc.)*, 283 B.R. 549, 567 (9th Cir. BAP 2002) (reviewing elements of equitable estoppel).

Creditors and Trustee cite a number of decisions in which principles of bad faith and estoppel are discussed, but such language is either dicta or unpersuasive in the circumstances of this appeal, or both. *See, e.g., In re Cluff*, 313 B.R. 323, 340–43 (Bankr.D.Utah 2004) (concluding that debtors' attempt to amend schedules was "disingenuous," "smacks of manipulation," and raised "issues of bad faith"). We cannot say that Debtors' objections were made in bad faith given Creditors' scant documentation and the diversity of judicial views on the effect of inadequate documentation.

██ Nor do we rely on evidentiary admissions in Debtors' bankruptcy schedules. It is true that, as the bankruptcy court orally suggested, bankruptcy schedules can constitute admissions under Fed. R.Evid. 801(d)(2). *See Cluff*, 313 B.R. at 340. Nevertheless, amendments to bankruptcy schedules are permitted "as a matter of course" any time before a case is closed. *See* Fed. R. Bankr.P. 1009(a); *Arnold v. Gill (In re Arnold)*, 252 B.R. 778 (9th Cir. BAP 2000) (discussing exceptions for bad faith or prejudice). Perhaps for this reason, the bankruptcy court's written order did not rely on such admissions. Nor do we.

██ Although we do not rely on estoppel, bad faith, or Debtors' admissions in their bankruptcy schedules, we may affirm on any basis supported by the excerpts of record. *Fernandez v. GE Capital Mortgage Services, Inc. (In re Fernandez)*, 227 B.R. 174, 177 (9th Cir. BAP 1998), *aff'd* 208 F.3d 220 (9th Cir.2000) (table). For the reasons discussed below we will do so in this case.

### 3. *The statute sets forth the sole grounds for objections, which do not include lack of compliance with Rule 3001(c)*

██ The requirements for proofs of claim are contained in the Bankruptcy Code, the Bankruptcy Rules and the Official Forms. Section 501(a) states that a creditor "may file a proof of claim." 11 U.S.C. § 501(a). Section 502(a) states:

> § 502. *Allowance of claims or interests*
>
> (a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects.

11 U.S.C. § 502(a).

Section 502(b) provides that if an objection to a claim is made, then the court, with inapplicable exceptions,

shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount except to the extent that— (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured; [or any of eight other reasons for disallowance].

11 U.S.C. § 502(b)(1)—(9).

Rule 3001(a) states that a proof of claim "shall conform substantially to the appropriate Official Form." Fed. R. Bankr.P. 3001(a). Form 10 is the official proof of claim form. The version mailed to creditors in this case was last revised in April, 2001, and the current version was revised in April, 2004, but there are no material changes for purposes of our discussion. Item 4 on the face of Form 10 instructs creditors to fill in the amount of their claim, check a box "if claim includes interest or other charges in addition to the principal amount of the claim," and "[a]ttach itemized statement of all interest or additional charges." Official Form 10, Item 4. The next to last item on Form 10 instructs creditors to attach copies of supporting documents "such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts," explain if the documents "are not available," and "[i]f the documents are voluminous, attach a summary." Official Form 10, Item 8 (4/01 rev.) or Item 9 (4/04 rev.). The instructions on the back of Form 10 are to the same effect, as are the 1991 Committee Note and the official instructions.

Rule 3001(c) and (f) state:

(c) *Claim based on a writing*

When a claim, or an interest in property of the debtor securing the claim, is based on a writing, the original or a duplicate shall be filed with the proof of claim. If the writing has been lost or destroyed, a statement of the circumstances of the loss or destruction shall be filed with the claim.

\* \* \* \* \* \*

(f) *Evidentiary effect*

A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.

Fed. R. Bankr.P. 3001(c) and (f).

■■■ Debtors argue on this appeal that Creditors should have attached copies of "the credit card agreement (and any amendments to it) to their proofs of claim because it is 'hard to believe' that such documents are 'too lengthy' to be attached." This ignores the fact that the "writing" for credit card accounts can be said to include not only the underlying credit card agreement but also the written or electronic records of every transaction on the account since the oldest unpaid obligation, or at least the monthly bills since that time. Such records are likely to be voluminous. Therefore, the creditor can comply with Rule 3001 and Form 10 by using some sort of summary. *See Cluff,* 313 B.R. at 332–35 (interpreting Form 10 and Rule 3001 and also citing Fed.R.Evid. 1006, authorizing summaries); *In re Kemmer,* 315 B.R. 706, 714 (Bankr. E.D.Tenn.2004) (same, and stating that credit card claim "is based upon both the underlying agreement creating the account *and* the actual transactions creating the debt under the account") (emphasis in original); *In re Crowe,* 321 B.R. 729 (Bankr.W.D.Wash.2005) (approving filing of summary in credit card case).

There is no uniform standard for what must be contained in such a summary. Although some breakdown of interest and

other charges must be included, it is unclear whether this should cover the entire account history, the last several billing cycles, or only those charges not reflected in the last prepetition monthly statement. *See Cluff,* 313 B.R. at 335 ("[T]he summary attached to the proof of claim should: (i) include the amount of the debts; (ii) indicate the name and account number of the debtor; (iii) be in the form of a business record or some other equally reliable format; and (iv) if the claim includes charges such as interest, late fees and attorney's fees, the summary should include a statement giving a breakdown of those elements."); *In re Armstrong,* 320 B.R. 97, 105 (Bankr.N.D.Tex.2005) (similar list); *In re Henry,* 311 B.R. 813 (Bankr.W.D.Wash. 2004) (same, but also requiring copy of underlying credit card agreement); *Kemmer,* 315 B.R. at 714–15 (summary adequate, not necessary for creditor to attach copy of underlying credit card agreement); *In re Sandifer,* 318 B.R. 609, 611 (Bankr. M.D.Fla.2004) ("[t]wo to four months of credit card statements" attached to some amended proofs of claim were adequate).

One or more of the proofs of claim in this case probably meet the more lenient standards and therefore may constitute prima facie evidence of the validity and amount of the claim. It is well established that such proofs of claim are "strong enough to prevail over a mere formal objection without more." *Garner v. Shier (In re Garner),* 246 B.R. 617, 623 (9th Cir. BAP 2000); *Wright v. Holm (In re Holm),* 931 F.2d 620, 623 (9th Cir.1991).

Other proofs of claim in this case probably fail all of the various tests for prima facie validity in the reported decisions. The interest rate and other details in the original Amex and Amex Centurion proofs of claim are hard to discern on the computer printout provided, assuming such information is present at all, and although the Amex Supplement consists of several months of credit card statements it still might not comply with Rule 3001(c). The first statement recites a total of $153.23 in "New Charges/Adjustments Inc[luding] Finance Charge" but then itemizes only a $29.00 "Late Payment Fee" on June 6, 2002, and a subscription charge of $9.95 on June 6, 2002. Claims that do not meet the standards of Rule 3001(c) lack prima facie validity and the question is whether they should be disallowed.

We have stated:

> It is generally held that failure to attach writings to a proof of claim does not require a bankruptcy court to disallow a claim on that basis alone. Rather, the claim is not entitled to be considered as prima facie evidence of the claim's validity.

*Consol. Pioneer Mortgage,* 178 B.R. at 226 (citations omitted).

In that case, however, the claim was not only procedurally defective, under Rule 3001(c), but also substantively lacked merit and was properly disallowed. *Id.* at 227. Therefore we did not have occasion to address whether a claim should be disallowed where there is no ground stated, other than non-compliance with Rule 3001(c), for disallowing the claim. *See also State Bd. of Equalization v. Los Angeles Int'l Airport Hotel Assocs. (In re Los Angeles Int'l Airport Hotel Assocs.),* 196 B.R. 134, 139 (9th Cir. BAP 1996) (stating in dicta that failure to attach a writing, "when required," does not automatically invalidate the claim, but liability in that case was based on statute not on writing), *aff'd,* 106 F.3d 1479 (9th Cir.1997); *Garner,* 246 B.R. at 623 (stating that "mere formal objection" narrows the issue to whether the proof of claim is executed and filed in accordance with the rules, but not addressing consequence if proof of claim does not meet that standard).

The reported decisions are split on this issue. What seems to be the minority view is that where a proof of claim is not entitled to prima facie validity under Rule 3001(c) and (f), that is a sufficient basis by itself to disallow the entire claim if the creditor does not amend its claim within a limited time, such as by the deadline to respond to the objection to their claim. As one court put it:

> [A] creditor must, at a minimum, file with its proof of claim form, but *in no event later than in response to a claims objection by the debtor,* (i) a sufficient number of monthly account statements to show how the total amount asserted has been calculated, and (ii) a copy of the agreement authorizing the charges and fees included in the claim. *In the absence of that minimum evidentiary presentation, the creditor's claim should be disallowed.*

*Henry,* 311 B.R. at 817–18 (emphasis added).

In another reported decision three judges issued a joint memorandum opinion in several cases stating that failure to attach required documentation to a proof of claim "will not result in disallowance of the claim," but they went on to state that because of the lack of prima facie validity the claimant "would have to establish the claim by a preponderance of the evidence," failing which the claim presumably would be disallowed. *In re Armstrong,* 320 B.R. 97, 106–09 (Bankr.N.D.Tex.2005).[5]

One justification for this minority approach is the burden to debtors or a trustee who "should not have to incur the cost of making a claims objection based on lack of supporting documentation when the Rules initially place the burden of providing support on the creditor," combined with the practical difficulties of obtaining accurate and complete information from institutional holders of credit card debt who frequently are not the original holder. *Henry,* 311 B.R. at 816–17. Another possible justification is the burden on a debtor—or a trustee who may have no familiarity with the debtor's actual debts—who must somehow decide which claims might be overstated or improper. Regularly excusing inadequate documentation could lead creditors to abuse the system. *In re All–American Auxiliary Ass'n,* 95 B.R. 540, 545 (Bankr.S.D.Ohio, 1989). Debtors echo these concerns on this appeal by asserting that without adequate documentation attached to the proof of claim they have "no meaningful opportunity to challenge the validity of the claim" and that they should not have to bear the costs and burden of discovery.

As an alternative to relying on the above minority cases Debtors raise a due process argument. They claim that a hearing on an objection to a claim is a meaningless act if they are not provided with the writings on which the claim is based, and therefore their due process rights have been violated and the bankruptcy court's orders allowing Creditors' claims are void, citing *Memphis Light, Gas & Water Div. v. Craft,* 436 U.S. 1, 14, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978), and *Owens–Corning Fiberglas, Corp. v.*

---

5. Three other reported decisions in the minority camp are all decided by the same judge who decided *Henry,* 311 B.R. 813. *See Crowe,* 321 B.R. 729; *In re Vann,* 321 B.R. 734 (Bankr.W.D.Wash.2005); *In re Schraner,* 321 B.R. 738 (Bankr.W.D.Wash.2005). *See also In re All–American Auxiliary Assoc.,* 95 B.R. 540, 545 (Bankr.S.D.Ohio, 1989) (stating that court "could" deny claim based solely on lack of prima facie validity, but going on to disallow claim on alternative grounds); *In re Blue,* 2004 WL 1745786 (N.D.Ill.2004) (rejecting argument that "substantial compliance" with Rule 3001(c) is sufficient, and treating resulting lack of prima facie validity as basis for disallowance without discussion, but directing that creditor be given opportunity to amend claim).

*Center Wholesale, Inc. (In re Center Wholesale, Inc.),* 759 F.2d 1440, 1448 (9th Cir.1985).

We are not persuaded by the minority view or by Debtors' arguments. First, we are bound by the plain meaning of the statute. Section 501(a) provides that a "creditor or an indenture trustee may file a proof of claim." 11 U.S.C. § 501(a). Section 502(a) states that a claim filed under Section 501 "is deemed allowed" unless an objection is made. 11 U.S.C. § 502(a). Section 502(b) states that if an objection to a claim is made, then the court "shall" determine the amount of such claim and "*shall allow* such claim" except to the extent that one of the limited grounds for disallowance is established. 11 U.S.C. § 502(b) (emphasis added). Noncompliance with Rule 3001(c) is not one of the statutory grounds for disallowance. The minority decisions do not explain how they can disregard this statutory mandate. The statute's provisions cannot be enlarged or reduced by the Rules. *See Dove–Nation v. eCast Settlement Corp. (In re Dove–Nation),* 318 B.R. 147, 150–51 (8th Cir. BAP 2004) ("Section 502(b) sets forth the *sole* grounds for objecting to a claim and directs the court to allow the claim unless one of the exceptions applies" and "[t]he rules are designed to supplement the statute, not replace it.") (citing 28 U.S.C. § 2075) (emphasis added); *Cluff,* 313 B.R. at 331–340; *In re Shank,* 315 B.R. 799, 801 (Bankr.N.D.Ga.2004) ("[T]here is no reason to require amendment of claims when, as here, there is no showing that there are any disputes about the debtor's liability on the claims or their amounts."); *Kemmer,* 315 B.R. at 716 ("[A]s long as the creditor has presented some evidence to substantiate the claim, the objecting party must have a basis for challenging the validity of the claim."); *In re Mazzoni,* 318 B.R. 576, 578 n. 12

(Bankr.D.Kan.2004) (following *Cluff, Shank,* and *Kemmer*); *In re Guidry,* 321 B.R. 712, 714 (Bankr.N.D.Ill.2005) (same).

Second, there is nothing in the statutory scheme that violates due process. The procedure for claims allowance or disallowance is designed to be speedy and inexpensive, and Section 502(a) deems claims allowed. The purpose of Rule 3001(f) is not to undermine this approach or create an independent reason to disallow claims but to permit the proof of claim itself to act similar to a verified complaint and have an independent evidentiary effect. *Cluff,* 313 B.R. at 332; *Garner,* 246 B.R. at 622 (evidentiary effect of proof of claim is "similar to that of a verified complaint"). In fact, a proof of claim has been said to have more weight than a verified pleading because it is signed under penalty of up to $500,000.00 or up to five years in prison, or both, for fraudulent claims. *See* Official Form 10 (citing 18 U.S.C. §§ 152 and 3571); *Cluff,* 313 B.R. at 337–38. If the proof of claim is not entitled to prima facie validity then it may have lesser evidentiary weight or none at all, but unless there is a factual dispute that is irrelevant:

The difficulty with [the minority line of cases] is that evidence of any kind— prima facie or otherwise—is a concern only at a hearing to resolve factual disputes. *See* Fed.R.Evid. 401 (defining "relevant evidence" as that tending to make more or less probable "the existence of any fact that is of consequence to the determination of the action"). The debtors' claim objections raised no factual dispute requiring a hearing. If [creditor's] proofs of claim are analogized to complaints—as is commonly done—then the debtors' objections are like motions to dismiss for failure to state a claim on which relief can be granted. The debtors do not deny any of the factual allegations of the proofs of claim; rather, their objections assert

that an evidentiary hearing is unnecessary because of [creditor's] noncompliance with Rule 3001(c). Thus, the question is not the evidentiary impact of noncompliance with the rule, but whether noncompliance itself renders a claim subject to disallowance. As already noted, it does not.

*Guidry,* 321 B.R. at 715 (footnote omitted). *See also Dove–Nation,* 318 B.R. at 152 ("Even if the proofs of claim are not entitled to prima facie validity, they are *some* evidence of the Claimant's claims.") (emphasis added, citing *Cluff,* 313 B.R. at 340); *Shank,* 315 B.R. at 811. *Compare In re Relford,* 323 B.R. 669, 676 (Bankr.S.D.Ind. 2005) (non-compliance with Rule 3001 does not necessarily result in disallowance or allowance, and "the determinative question is whether the preponderance of the evidence supports allowance of the claim as filed").

Third, even if we had discretion to apply equitable principles, we disagree with Debtors that the equities necessarily flow in their favor. As we understand the minority rule, if a hypothetical creditor files a proof of claim for $5,000 in credit card purchases plus interest and other charges, but does not provide an adequate summary of the interest charges, then the entire claim lacks prima facie validity and can be disallowed by objections like the ones in this case, even if the debtor has no basis to challenge the $5,000 amount. As the bankruptcy court observed, a typical creditor might face something like "a ten percent return" making it "more trouble to respond than the claim is worth." Transcript, April 20, 2004, p. 3:11–12.

At oral argument before us, counsel conceded that Debtors have no basis to claim that any goods or services were wrongly charged to them, or that any specific interest charges or fees were miscalculated or wrongly imposed, or that they can establish any other grounds for disallowance in Section 502(b). Debtors argue that it might be difficult or expensive to verify the amount of Creditors' claims, but that argument rings hollow because there is no evidence that they ever tried. Several proofs of claim even list telephone numbers for such inquiries. *See Shank,* 315 B.R. at 816 ("debtor's objection does not indicate that she requested documentation and that it was denied").

Debtors' proposed standards would require creditors to provide volumes of documentation attached to every proof of claim or in response to objections based solely on non-compliance with Rule 3001(c), and that "would unduly burden the parties and would inundate the Court with documents." *Cluff,* 313 B.R. at 335. It would also invite abusive objections and more litigation and would serve no purpose because "[i]f there is no substantive objection to the claim, the creditor should not be required to provide any further documentation of it." *Shank,* 315 B.R. at 813.

That said, we agree with courts in the majority that creditors have an obligation to respond to formal or informal requests for information. That request could even come in the form of a claims objection, if it is sufficiently specific about the information required.[6] This obligation to respond applies regardless whether Creditors have met their obligation to provide a summary under Rule 3001(c). *See Cluff,* 313 B.R. at 335–36 ("using a summary also requires the creditor to make the underlying documents available for examination at a reasonable place and time,

---

6. Of course, such an objection should not be inconsistent with sworn schedules that con-

cede all or some portion of the debt.

and such creditors should not underestimate the Court's willingness to compel them to do so," interpreting Form 10 and Fed. R. Bankr.P. 3001 consistent with Fed. R.Evid. 1006); *Shank,* 315 B.R. at 816 (noting creditors' obligation to respond to "appropriate request, formal or informal").

■■■ If the creditor does not provide information or is unable to support its claim, then that in itself may raise an evidentiary basis to object to the unsupported aspects of the claim, or even a basis for evidentiary sanctions, thereby coming within Section 502(b)'s grounds to disallow the claim. *Shank,* 315 B.R. at 816. (creditor who fails to provide supporting documentation "may well find itself with a disallowed claim"); Fed.R.Civ.P. 37(a)(4) and (b)(2)(A) and (C) (incorporated by Fed. R. Bankr.P. 7037 and 9014(c)). We would be faced with a very different case if, for example, Debtors' objections stated that they had written to a Creditor explaining that they questioned specific charges, or that during the slide into bankruptcy they had not reviewed or retained their monthly statements, and therefore they wanted the past twelve months' credit card statements to verify the Creditor's calculation of principal, interest, and other charges. As one decision explains:

> If the debtor thinks that every one of the challenged claims is overstated, that every claimant has included illegal or unauthorized charges, or that for any reason she has no liability to any of them, she may investigate fully her theories and raise every viable claim or defense that she has. If the debtor requires documentation to make a good faith inquiry into the existence or amount of any liability and a claimant

refuses a legitimate request to produce it, an objection that asserts her good faith challenge and requests disallowance of the claim due to inadequate documentation would be appropriate and could well result in entry of an order disallowing the claim or requiring its amendment. . . .

> But if the debtor thinks, for example, in accordance with her sworn statement in Schedule D in this case, that she owes First North American National Bank only $1,776.00 on the proof of claim filed by its assignee for $12,992.72, the proper objection is that the claimant has not established anything in excess of the amount the debtor admits is owed, not a request for complete disallowance of the claim merely because of inadequate documentation.

*Shank,* 315 B.R. at 815.

Debtors' claims objections do not meet the above tests. Creditors were not required to respond.[7]

## V. CONCLUSION

We will presume that Debtors genuinely questioned and sought to verify the correct amounts of their credit card debts and were not trying to set Creditors up for a default disallowance of their claims because of the burden of responding. They simply chose the wrong method of doing so. Rather than contacting Creditors and asking for appropriate documentation of any claims that they reasonably believed they might not owe, or might owe in a different amount, they filed objections that relied solely on the alleged lack of prima facie validity of the proofs of claim. That is not a sufficient objection recognized by

---

7. We recognize that the bankruptcy court reduced Creditors' claims to the amounts listed in Debtors' bankruptcy schedules, and that this grants Debtors more than we hold they were entitled to. There is no cross appeal, however, so we do not disturb this aspect of the bankruptcy court's ruling.

Section 502, which deems claims allowed and directs that the bankruptcy court "shall" allow claims with limited exceptions that were not alleged by Debtors. Therefore, the bankruptcy court's allowance of Creditors' claims was proper, and the Reconsideration Order is AFFIRMED.